BecK, C. J.
The only questions presented by the assignment of errors which are seriously contested, relate to the instructions given to the jury at the trial.
The first instruction informed the jury that every material allegation of the complaint not denied by the answer might be taken as true, and need not be proved by the plaintiff.
*442 The objection to this instruction is, that it is not applicable to the present case.
The substance of the complaint is, that on the 22d day of September, 1879, the defendants were partners under the name and style of Wall & Witter, and were common carriers of passengers by stage, for hire, from Red Hill station, on the line of the Denver, South Park & Pacific Railroad, to the city of Lead-ville. That on the day named they undertook to carry the plaintiff from said station to Leadville, for the sum of $8, which he paid, and that he was thereupon received upon their coach as a passenger. It sets out the facts of the overturning of the coach at Red Hill, averring that the plaintiff received serious and permanent injuries, from which he has never recovered; his continued sickness and inability to attend to business, and that he was forced to expend the sum of $500 for medical attendance and nursing, averring that the accident occurred through the carelessness and negligence of the defendant. Damages are laid in the sum of $10,000.
The answer does not, in any manner, deny the copartnership of the defendants; the style of their firm; that they were, at the time mentioned, common carriers of passengers by stage; that they undertook to carry the plaintiff as stated, nor the payment of his fare. It does not deny the overturning of the coach; that plaintiff sustained the injuries stated, or that he expended $500 for medical attendance and nursing. The above facts not being controverted by the answer, rendered the instruction complained of peculiarly appropriate to this case.
It was suggested on the argument that the instruction offered an opportunity, which was taken advantage of, to argue to the jury that the amount of damages claimed was admitted by the pleadings.
The language of the instruction is plain and unambiguous, and no such inference is fairly deducible from it. The amount of damages claimed was $10,000. The answer in substance denied that plaintiff had sustained any damages through the carelessness and negligence, of the defendants, and averred that whatever damages he sustained were sustained in consequence of his own negligence. The latter averment was denied by the replication.
*443 The issues, therefore, tendered by the pleadings were: Was the injury occasioned by the negligence of the defendants? Did the plaintiff contribute thereto? and, What amount of damages, if any, is he entitled to recover?
The instructions given recognized these issues, and were applicable thereto.
The amount of the verdict, which was $4,500, being less than half the amount claimed, shows that the jury did not misapprehend the force of the instruction.
The objections to the second instruction are without merit. It correctly states the elements of compensatory damages, which the jury may take into consideration in estimating the damages sustained by the plaintiff, if they find for the plaintiff.
Subsequent instructions advised the jury that in order to entitle the plaintiff to a verdict in his favor, they must find from the evidence that the accident and injury resulted from the carelessness or negligence of the defendants, their agents or drivers; but that if it appeared from the evidence that the plaintiff was chargeable with carelessness or negligence, such as an ordinary prudent man would have avoided under the circumstances, and that such carelessness or negligence contributed to the injury, they must find for the defendants. In this connection they were instructed to take into consideration the situation of the plaintiff and the surrounding circumstances at the time of the accident, in determining whether or not there was a want of ordinary care on the part of the plaintiff.
In respect to the fourth instruction given on behalf of the plaintiff, defendants’ counsel contend that it contains two erroneous propositions, the first of which is decidedly against the weight of authority.
The first proposition is, that proof that the plaintiff was a passenger on defendants’ coach, that the coach was overturned, and that the plaintiff was injured thereby, raises the presumption that the overturning occurred through the negligence of the defendants.
The second proposition is, that the foregoing facts being established to the satisfaction of the jury, the burden of proof is cast upon the defehdants to show the absence of such negli *444 gence on their part, or negligence on plaintiff’s part which contributed to the injury.
Many authorities are cited to show the incorrectness of the doctrine contained in this instruction. Only a few of them are strictly analagous to this case. The Michigan cases, however, are in point. The doctrine of the Michigan Courts is, that the plaintiff must show affirmatively that the defendant is entirely responsible for the injury; that the material negligence which led to the accident was that of the defendant, and that the. plaintiff did not contribute towards it. They say the “plaintiff must establish completely whose fault it was, and explain the whole transaction.” Michigan Cent. R. R. Co. v. Coleman, 28 Mich., 447; Detroit & Milwaukee R. R. Co. v. Van Steinburg, 17 Mich., 99; Lake Shore & Mich. S. R. R. v. Miller, 25 Mich., 274; Kelly v. Hendrie, 26 Mich. R., 255.
While the fourth instruction is in conflict with the rule established in the cases above cited, we do not think it opposed to the weight of authority upon the point, but in conformity therewith.
The same rule laid down in the instruction was recognized by this Court as the correct one in the case of Denver, S. P. & P. R’y. Co. v. Woodward, Admr., 4 Colo., 1.
It will be observed that the instruction does not announce the broad doctrine, that the mere fact that an injury was suffered by a passenger, while on his journey, is sufficient to raise a presumption of negligence on the part of the carrier. No abstract rule of law is laid down, but the legal propositions contained in the instruction are.confined to the case on trial, and based upon the evidence before the jury.
We concede the law to be, that in order to entitle a passenger to recover against a carrier for injuries received on the journey, he must prove that he received the injuries while a passenger upon the coach or road of the carrier, and that the same were occasioned by the negligence of the carrier. A prima facie case, however, is made out by proof that the relations of carrier and passenger existed between the parties, that an accident occurred resulting in injury to the passenger, and that it was occasioned by the failure of some portion of the machinery, appliances or means provided for the transporta *445 tion of the passenger. This proof being made, a presumption of negligence on the part of the carrier arises, and the plaintiff is not bound to go further and show the particular defect or cause of the accident until that presumption is rebutted. It devolves upon the carrier then to rebut this presumption, by evidence that he exercised the greatest degree of diligence practicable under the circumstances.
The reason of the rule as applied to this class of cases, appears to be founded in the nature of the carrier’s undertaking, and the relations subsisting between him and those whom he undertakes to carry.
He assumes the responsibility of providing suitable and sufficient means for transportation, and he has the exclusive management of the same during the journey. As a general rule, when an injury occurs he has the superior, if not the exclusive means of knowledge within his control, as to what caused the accident. In view of this undertaking, and of these relations, the law binds him to make use of all the ordinary precautions for the safety of his passengers on the road, and to do all that human care, vigilance and foresight reasonably can_ under the circumstances, in view .of the character and means of conveyance adopted, to prevent accidents which may result injuriously to his passengers. Story on Bailments, Secs. 590-598; Tuller et al. v. Talbot, 23 Ill., 357.
When, therefore, an injury happens to a passenger from an accident to the vehicle or other means of transportation employed, until explained, it is presumable that it happened from want of due care on the part of the carrier. If, however, in proving the injury, facts and circumstances are developed which tend to exonerate the carrier, or to charge the plaintiff with having contributed, to the injury received, no such presumption arises.
One of the earliest leading cases on this point is that of Christie v. Griggs, 2 Camp., 79. In that case the plaintiff proved that he was a pilot by occupation; that he was traveling to London by stage, when the axle-tree broke, precipitating him to the ground, and severely injuring him, by reason of which he was confined to his bed for several weeks.
At this point the plaintiff rested, when it was insisted by *446 opposing counsel that he must go further and show either that the driver was unskillful, or that the coach was insufficient.
But Sir James Mansfield, C. J., held that the plaintiff had made out a prima facie case, by proving his going upon the coach, the accident, and the damages he had suffered, It was then for the defendant to show the sufficiency of the coach, and the skillfulness of the driver. The plaintiff, being a sailor, would not know whether the coach was well built or not, or whether the driver drove skillfully. It was further held that when the breaking down or overturning of a coach is proved, negligence on the part of the owner is implied, he having always the means to rebut this presumption, if it be unfounded.
This case, with others announcing a similar doctrine, are cited approvingly by the Supreme Court of the United States in the case of Stokes v. Saltonstall, 13 Pet., 181.
That was an action to recover damages for an injury sustained by the wife of the defendant in error, by reason of the upsetting of a stage coach, in which she was a passenger. The declaration charged that the injury was caused by the negligence and want of skill of the driver, which allegations were put in issue by the plea of the defendant.
The first instruction to the jury in the Court below was: “The defendant is not liable in this action, unless the jury find that the injury of which the plaintiff complains was occasioned by negligence, or want of proper skill or care of the driver of the carriage in which he and his wife were passengers ; and the facts, that the carriage was upset, and the plaintiff’s wife injured, are prima facie evidence that there was carelessness, or negligence, or want of skill, on the part of the driver, and throws upon the defendant the burden of proving that the accident was not occasioned by the driver’s fault.”
Th'e second instruction was: “It being admitted that the carriage was upset and the plaintiff’s wife injured, it is incumbent on the defendant to prove that the driver was a person of. competent skill, of good habits, and in every respect qualified and suitably prepared for the business in which he was engaged, and that he acted on this occasion with reasonable skill and with the utmost prudence and caution; and if the *447 disaster in question was occasioned by the least negligence or want of skill or prudence on his part, then the defendant is liable in this action.”
The Supreme Court held that these instructions laid down the law correctly, and that construing the two instructions together, it was only necessary for the defendant, in order to meet the plaintiff’s prima facie case, to prove that the coachman was a person of competent skill in his business, that, the coach was propsrly made, the horses steady, etc.
Another leading case upon the point under consideration is Curtis v. Rochester & Syracuse Railroad Co., 18 N. Y., 534.
This was an action for damages received by a passenger on defendant’s railroad, alleged to have been caused by the negligence of defendant’s servants. The train containing the plaintiff ran off the track at a switch, whereby the plaintiff was seriously injured.
An instruction had been given to the jury on the trial “that the fact of this accident occurring was of itself presumptive evidence of negligence on the part of the defendant.”
The doctrine of this case is, that whenever it appears that the accident occurred through some defect in the vehicle or other apparatus belonging to the defendant, and used in connection with his business, a strong presumption of negligence on the part of those whose duty it was to see that everything was in order, immediately arises; but when nothing is known in regard to the cause of the accident, and it may as well have been caused by the act of a stranger, for which the carrier is not responsible, as by his employees, for whose acts he is responsible, no such presumption arises.
In respect to the instruction given, the Court called attention to the fact, that it did not announce a general proposition of law, but was limited to the case on trial. And in the judgment of the Court enough of the circumstances of the case were proved to warrant the presumption of negligence against the railroad company, which it must rebut in order to discharge it from liability. The following cases are to the same effect: Railroad Company v. Pollard, 22 Wall., 341; Roberts v. Johnson, 58 N. Y., 613; Meier v. Penn. R. R. Co., 64 Pa. St., 225; Toledo, Wabash & Western R’y. Co. v. Beggs, 85 Ill., 80; *448 Sawyer et al. v. H. & St. Jo. R. R. Co., 37 Mo., 240; Fairchild v. Cal. Stage Co., 13 Cal., 599. See also, Angell on Carriers, Sec. 569; Thompson’s Carriers of Passengers, pp. 210, 214; Sherman & Redfield on Negligence, Sec. 280.
The foregoing authorities amply sustain the fourth instruction, as containing correct legal propositions. That the evidence adduced upon the trial warranted its submission to the jury, does not seem to us to admit of a doubt. An agent of the stage company had sold the plaintiff an outside seat upon the stage. He was seated upon the outside under the supervision of the agents of the defendants, and was occupying his seat at the time of the accident., The passengers were all in their seats, the driver was in his place with the reins in his hands, about to start, when an agent of the defendants required him to leave his team and buckle the hind boot of the coach. The team stood within thirty feet of a train of cars, to which was attached a locomotive with steam up. The driver at first refused to leave his team, but on being told by the agent that such were the proprietors’ orders, he wrapped the reins around the brake handle, and calling to a bystander to watch his team, got down and proceeded to do as commanded. The bystander remained with the team but a few moments; the whistle of the engine was sounded, and the train started, at which the horses took fright and ran away, overturning the coach and producing the disaster complained of.
Viewing the charge as a whole, it is our opinion that it is sustained by well settled principles of law, and was warranted by the evidence.
With regard to the instructions refused, we think they were severally liable to one or more of the following objections, viz: They embodied doubtful legal propositions—were inapplicable to the case on trial, or the substance of the requests were embraced in instructions which were given.
In relation to the amount of damages awarded the plaintiff, we have to say, that in cases of this character the law does not warrant us in disturbing the verdict, where no important error has occurred in the trial, unless the amount of damages allowed is so manifestly disproportionate to the injury received as to make it appear that the jury were influenced by prejudice, misapprehension or by some corrupt or improper consideration.
L. J. Laws, for plaintiffs in error.
A. S. Weston, for defendant in error.
It is exclusively the province of the jury to estimate and assess the damages, and the amount to be allowed in such cases as this rests largely in their sound discretion. They are to take into consideration all the direct consequences of the injury received, such as the bodily pain suffered, the loss of time, and pecuniary expenses occasioned thereby, and the permanent injuries, if any, resulting therefrom. Worster v. Proprietors Canal Bridge, 16 Pick., 547; Ransom v. N. Y. & Erie R. R. Co., 15 N. Y., 415; Curtis v. Rochester & Syracuse R. R. Co., 18 N. Y., 534; Holyoke v. Railway, 48 N. H., 541; Wheaton v. N. B. & M. R. R. Co., 36 Cal., 591.
The rule of damages laid down in the instructions in this case was that of compensation for the actual damages sustained, although the circumstances of the accident, as detailed by the witnesses, show it to have been wholly unnecessary and inexcusable on part of the employees of the defendants, and that the plaintiff did not contribute to his injury. The testimony also shows the consequences resulting to the plaintiff were of a most serious nature.
At the time of the accident he was a hale, active man, in the enjoyment of excellent health. From that day up to the time of the trial, a period of one-year and five months, he had been a helpless invalid, and was not then able to stand on his feet without assistance, according to his sworn testimony. His physicians testified that he was permanently disabled, and his health permanently impaired. His bodily sufferings, too, appear to have been severe. In- addition to these facts, the pleadings admit, as previously observed, that the plaintiff expended for medical attendance and nursing, the sum of $500 in money. With these facts and circumstances before us, it would be highly improper for us to interfere with the finding of the jury.

Judgment affirmed.