### Chicago City Ry. Co. v. Robert Carroll.

1. BURDEN OF PROOF—*When it is Shifted in Actions for Personal Injuries.*—In an action for personal injuries, where the evidence shows that the injury was the result of the falling of a trolley pole used in operating the car on which the plaintiff was riding, the burden of proof is thrown upon the railroad company to show that such fall was without its fault.

2. PRACTICE—*Admission of Evidence After the Parties Have Rested Their Case, Discretionary.*—The introduction of evidence after a party has rested his case is a matter resting in the discretion of the court.

3. REMITTITUR—*Where the Recovery is Excessive.*—Where, on an appeal from a judgment for personal injuries, the Appellate Court is of the opinion that such recovery is excessive, it may order that the judgment be affirmed on condition that a certain amount is remitted by a certain date, otherwise that it be reversed and remanded.

Trespass on the Case, for personal injuries. Appeal from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge presiding. Heard in the Branch Appellate Court at the March term, 1901. Affirmed on remittitur, etc. Opinion filed May 23, 1902.*

WM. J. HYNES and SAMUEL S. PAGE, attorneys for appellant; MASON B. STARRING, of counsel.

STEERE & FURBER, attorneys for appellee; A. B. ST. JOHN, of counsel.

---

* Remittitur filed and cause affirmed June 2, 1902.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

Appellee recovered a judgment of $5,000 for alleged personal injuries. It is sought by appellant to reverse this judgment, and it is contended that the various counts of the declaration are not proven, that the evidence does not support the claim that appellee received serious injury, and that there was error in the giving and refusing of instructions.

There are five counts of the declaration, several of which are clearly not proven. But on the other hand, there is evidence which was properly submitted to the jury tending to sustain the averments of negligence under the amended and additional counts. The first of these charges is, in substance, that appellee was a passenger upon a street railroad owned and operated by appellants; that he was riding upon an electric car operated by means of a trolley pole; that he had received from appellant a transfer slip entitling him to change at Thirty-fifth street from a Wentworth avenue car to a Thirty-fifth street car; that while making such change and walking from one car to the other, using all due care and caution, appellant so carelessly and negligently managed and operated said Wentworth car and trolley pole attached thereto, that the pole fell, hitting appellee on the head, whereby he was injured. The additional count contains similar averments, but charges that appellant carelessly and negligently permitted plaintiff to be hit upon the head by said trolley pole, whereby he was hurt. It is claimed by appellant that there is no evidence that the trolley pole fell because the appellant's servants " negligently managed and operated " the car or the pole. It is true that appellee's evidence does not show specifically what it was which caused the pole to fall. We are of opinion, however, that in this case *res ipsa loquitur* to this extent, that it being shown that appellee was a passenger, in transit from one of appellant's cars to another, when injured, that he was supplied with a transfer ticket to continue his journey, and was under appellant's charge with all the rights of a pas-

senger to a high degree of care for his protection, and it appearing that he was hit and injured by a portion of the very machinery used in operating the car, the burden of proof was, in accordance with the rule laid down in N. C. St. Ry. Co. v. Cotton, 140 Ill. 486 (p. 494) and C. City Ry. Co. v. Rood, 163 Ill. 477 (p. 482), thrown on appellant to show that the accident occurred without fault of the carrier. There is no evidence of the operation of any outside agency on the trolley pole causing it to fall, and no such claim is made. As said in the case last referred to, "If the circumstances surrounding the accident are such as to indicate that it would not probably have occurred if the company had been in the use of suitable machinery or safe apparatus, or if it had employed proper and competent servants to manage such machinery or apparatus, then the burden of proof will be shifted to the carrier."

After appellant—defendant below—had rested, appellee's attorney was allowed to call an additional witness, over appellant's objection and exception, who testified that the name on the cars of the Wentworth avenue and Thirty-fifth street lines at the time of the accident was "The Chicago City Railway." Thereupon, appellant asked leave to offer evidence in reply to the fourth count of the declaration on the question of inspection of the car and appurtenances, which leave the court refused to grant, stating that no evidence would be received at that stage of the trial except as to ownership of the line. It is now urged that the appellee having been allowed at that stage to put in testimony as to ownership, appellant was then entitled to prove that it had properly inspected the car and trolley in question, and to show, if it could, that upon such inspection nothing had been found out of order; that such defense was not before necessary because of want of proof of appellant's owning or operating the car lines upon which appellee claims to have been injured, but became necessary as soon as such evidence was introduced. We do not think the court erred in its ruling. There was evidence already in, which it was proper for the jury to consider on the ques-

tion of appellant's ownership, and on that question the court offered to allow appellant as well as appellee to introduce further evidence. It was not an improper exercise of the court's discretion to exclude evidence at that stage upon other matters, which could have been introduced in regular order.

It is contended in behalf of appellant that the preponderating evidence shows appellee received no serious or permanent injuries; that he is simulating injuries which have no existence in fact, and that he is a malingerer. There is much evidence to support this conclusion, tending to show that appellee is suffering from a bad case of what the medical witnesses term "litigation symptoms." But it is not denied by appellant that he was struck by a falling trolley pole substantially as charged in the declaration, and that he was knocked down, receiving some bruises. It is claimed that these bruises were not serious and left no permanent injury, and the evidence apparently fails to show any good reason why such a blow as appellee received should have left any serious consequences. But there is evidence also tending to show that appellee is suffering to some extent from the consequences, whether real or imaginary.

That he is not injured to the extent which he claims is, we think, apparent from the medical and other testimony introduced on both sides. The blow which he received was a glancing blow on the side of the head and in accordance with ordinary medical and surgical experience would not be regarded as severe or as likely to be followed by any serious consequences. It knocked him down, but did not produce immediate unconsciousness and left no scar. It is as apparent as in the nature of the case it can be from his own testimony and conduct, that since that time he has been trying to persuade others, and may have persuaded himself that he has received injuries of a kind which, if they exist at all, are contrary to all the medical or surgical indications. His answers to questions are some of them clearly evasive, and when, speaking of the place where he

was struck, he says, " I would like you and the jury to look at the corroded blood that is at the bottom of it," which he says is under the scalp and below the skull, confidence in his credibility as a witness is materially weakened. Of a like character is his statement that his " whole inside is raw, and it goes half way up the left side of my body and my inside." This from a blow on the side of the head. His own physician and strongest witness in his behalf testifies " I have no name for his ailment," and says, " No person can tell the exact condition of his nervous system;" and can only say that appellee " is a cripple," when asked to state what the matter is with him. The evidence relied upon in his behalf is mostly what is called " subjective "— that is, what the appellee says about himself, and which may or may not be true. The value of such evidence depends very largely upon the candor and truthfulness of the person. As to this we must judge in a large measure from his own testimony and conduct, and from the evidence of the medical witnesses as to the tests of deception. We are unanimously of the opinion that the evidence does not justify the verdict and judgment for so large an amount.

At the same time the evidence that he was in fact and at least temporarily injured substantially as alleged in the declaration is not materially controverted, and for such damage as he has actually suffered he is entitled to compensation. If, therefore, appellee's counsel shall within ten days enter a remittitur reducing the judgment to $3,000, it will be affirmed; otherwise the judgment will be reversed and the cause remanded.

Affirmed on remittitur.