# THE WESTERN MARYLAND RAILROAD COMPANY *vs.* MAUDE SHIVERS.

*Carriers—When Injury to Passenger Creates Presumption of Carrier's Negligence—Car Overturned on Mountain Side—Negligence of Carrier a Question for the Jury—Instructions.*

A carrier is not an insurer of the safety of his passengers but he is bound to use the utmost care and diligence which human foresight can employ. If in spite of the observance of that care an injury happens to the passenger from an act of God or a *vis major*, no action can be maintained, because negligence and not the mere fact of an injury is the foundation of the passenger's right of action.

When an injury to a passenger is occasioned by an abnormal condition in the carrier's department of transportation, the presumption is that the abnormal condition was caused by the carrier's negligence; and the passenger is entitled to recover damages for such injury unless it be shown that the abnormal condition was the result of an unavoidable accident or a *vis major.*

When it is satisfactorily established that the abnormal condition producing the injury was occasioned by a *vis major*, the presumption of negligence is rebutted. But evidence tending to establish that the neglect of the carrier caused the abnormal condition cannot be withdrawn from the jury merely because the carrier has adduced preponderating contradictory evidence.

When the declaration in an action against a carrier alleges that the plaintiff, a passenger, was injured by the derailment and overturning of a car, caused by the negligence of the defendant and that the derailment was the result of a broken rail, and of the neglect of the employees in charge of the car and of the train, and the plaintiff adduces some evidence of such negligence which is contradicted by the carrier's evidence, the Court cannot rule, as matter of law upon the pleadings and evidence, that the defendant has by competent evidence proved that the accident was not due to its negligence.

If an injury to a passenger is caused by a broken rail the failure of the carrier's trackwalker to discover the break is evidence of the carrier's negligence as respects the passenger.

While a train was ascending a heavy grade on the side of a mountain, and rounding a curve, the rear trucks of the rear car, in which the plaintiff was a passenger, left the tracks. The derailed car was carried four hundred and sixty-two feet over the cross ties until the wheels which were

outside of the rail fell into a slight wash-out, when the car was wrenched loose from the one in front, and turning over rolled down the mountain a distance of seventy feet. At the place where the wheels left the tracks, there was found a defective rail—a slab about two and a-half feet in length having been broken out from its inner side.   After the accident this slab was not found, although looked for, and there was evidence that the rail presented the appearance of being considerably worn. This rail had been in constant service for nearly twenty years and had lost by use about four per cent of its original weight, which was sixty pounds to the yard.   The temperature on the day of the accident was below zero, and about four inches of snow were on the ground.   On that day the track inspector had walked over the track but did not discover the defective rail.   There was evidence in the case to show that sixty-pound rails are inadequte on the curve of a mountain side for a railroad on which heavy freight trains are hauled.   There was also evidence that no attempt was made to apply the emergency brake until the derailed car became severed, and that if the brake had been applied earlier the train could have been stopped within two hundred feet of the point where the brake was set.   The evidence as to whether the conductor had pulled the emergency brake rope or not, was conflicting. *Held*, that the question whether the defendant was guilty of negligence was properly left to the finding of the jury.

*Held*, further, that the defendant was not entitled to have the jury instructed that there was no evidence that the road-bed and track was in bad repair or in a defective condition prior to the breaking of the rail, or that there was no evidence in the case that the accident originated from any other cause than the broken rail.

Appeal from the Circuit Court for Carroll County (THOMAS, J.), where there was a judgment for plaintiff for $10,000.

. The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD and SCHMUCKER, JJ.

*George R. Gaither* (with whom were *Roberts & Crouse* on the brief), for the appellant.

*James A. C. Bond* and *Charles E. Fink* (with whom was *F. N. Parke* on the brief), for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

. This is a personal injury case.   The appellee, who was travelling from Hagerstown to Unionbridge in one of the coaches of the appellant company, was seriously hurt by reason of the

car suddenly leaving the rails, and, after running over the cross-ties for several hundred feet, plunging down a precipitous mountain declivity. The trial resulted in a verdict for the appellee, and upon that verdict a judgment was entered against the appellant. From that judgment this appeal was taken. The only questions which the bill of exceptions contained in the record bring up for review are those arising on the prayers for instructions to the jury.

The main contention of the appellant is, that a *vis major* caused the car to leave the rails; that the resultant injury was due, therefore, not to negligence, but to an unavoidable accident, which furnished no cause of action; and that upon the evidence adduced by the appellant, the trial Court should have so instructed the jury, as a matter of law. There are some subsidiary propositions which will be better understood after the controlling one has been discussed, and which, for that reason, will be stated and considered later on.

It is undoubtedly true that a carrier is not an insurer of the safety of his passengers. He is bound to use the utmost care and diligence which human foresight can employ. *City Pas. Ry. Co.* v. *Nugent*, 86 Md. 356. This is the limit and the measure of the duty which he owes to the passenger. If, in spite of the observance of that degree of precaution, an injury happens to the passenger from an act of God or a *vis major*, no action, in such circumstances, can be maintained. Negligence, and not the mere fact of an injury, is the foundation of the passenger's right to recover. Direct evidence of negligence is not necessary, because negligence, like any other fact, can be established by the proof of circumstances from which its existence may be inferred. The relation of passenger and carrier being established, then, if it should appear that the accident occurred from some abnormal condition in the department of actual transportation, the law raises the presumption that the abnormal condition had its origin in, or was referable to, some antecedent or coincident omission of an imposed duty. Such an omission is negligence, and such negligence when producing an injury to the passenger, fastens a respon-

sibility on the carrier, unless it be satisfactorily shown that that abnormal condition proceeded from some source in no manner attributable to the carrier.   This is the principle which the appellant's first prayer was designed to invoke; and we have now to inquire, whether the form of the prayer and the circumstances of this case, would have warranted the Court in granting it.  The prayer is in these words:   "The defendant prays the Court to rule as a matter of law upon the pleadings and evidence in this case, the defendant has by competent evidence proven that the accident in this case was not due to the negligence of the defendant, its employees or agents and that the  plaintiff is not entitled to  recover."   The Court declined to grant this prayer.

It will be observed that the prayer refers to the *pleadings* and to *all* the evidence in the case, and then asks the Court to *"rule as a matter of law"* that the defendant has by competent evidence proven that the accident was not due to the negligence of the defendant.   As the pleadings rely upon several alleged acts of negligence they must be examined before considering the prayer.   The first count of the declaration charges that the injury sustained by the appellee was due to the derailment and overturning of the car and its descent down a steep embankment "caused by the negligence of the defendant and its servants."   The second count avers that the injury happened in consequence of the misconduct and default of the railroad company in negligently and wrongfully permitting its road-bed and tracks to be out of repair and to be in a broken, defective and dangerous condition; *and also* by reason of the wrongful act, neglect and default of the employees of the company in charge of the coach or car. The third is substantially a repetition of the second count except in this that it enlarges the averment of negligence by including, not only the employees in charge of the derailed *car*, but those in control of the *train*.   It thus appears that there are three distinct imputations of negligence. The first is the derailment of the car; the second, the broken rail *and* the neglect and default of the employees in charge of the car; and the third, the broken rail *and* the neglect and de-

fault of the employees in charge of the car *and* in charge of
the train.   To which of these alleged causes was the accident
due ?   The prayer asked the Court to rule *as a matter of law*
that the appellant was not answerable at all, and therefore was
not liable.for the consequences of any of these asserted acts of
negligence, not because the appellee had failed to adduce any
legally sufficient evidence to support the declaration, but be-
cause the appellant had "by competent evidence proven that
the accident was not due to" its negligence.   The structure of
the prayer is entirely consistent with the theory that the ap-
pellee had presented evidence tending to sustain her cause of
action.   But in spite of that unexpressed but plainly implied
theory it asks a specific ruling, as a matter of law, to the effect
that the company had by competent evidence proved that it
had not been guilty of negligence.   The Court was thus re-
quested to take the place of the jury and to determine after
balancing conflicting evidence (and there was such evidence)
that the testimony adduced in exculpation of the appellant
outweighed that which inculpated it.   We say the structure
and import of the prayer are in complete harmony with the
theory that some evidence had been offered tending to fasten
the charge of negligence upon the appellant, because the Court
was not asked to say that no such evidence had been intro-
duced by the appellee, and because the prayer refers to and
includes *all* the evidence in the case, and sets up by way of
exculpation, solely and exclusively the facts established, or
assumed to have been established, by the appellant.   The
presumption of negligence arising from an injury to a passen-
ger when the injury is occasioned by an abnormal condition in
the department of actual transportation, is evidence sufficient
to entitle a plaintiff to recover, if the abnormal condition be
not unequivocally referable to a non-actionable accident or to
a *vis major*.   The facts which give rise to such a presumption
cannot justify an opposite inference, because inconsistent pre-
sumptions cannot spring from or be founded on the same
basis.   As a presumption is simply an inference or conclusion
logically deduced from known data, it is obvious, when con-

trary or contradictory conclusions are asserted as resulting from the same premises, that one or the other or possibly both must be erroneous. But it is competent for the carrier to show by affirmative evidence that the abnormal condition which occasioned the injury was referable exclusively to a cause which the law denominates an unavoidable accident or a *vis major*. When it is satisfactorily established that a *vis major* occasioned the abnormal condition which produced the injury, then the presumption that the abnormal condition proceeded from negligence, or that it evidences antecedent negligence, is no longer available. In no instance, however, can the wrongful act, neglect or default of the employees of a carrier be treated as a *vis major;* nor can the evidence tending to establish such act, neglect or default be withdrawn from the consideration of the jury merely because the carrier has adduced preponderating contradictory evidence. Assuming, but not deciding, that the Court would be justified in ruling as a matter of law that the exculpatory evidence was conclusive as respects the cause which produced the physical condition of the broken rail, still the prayer we are considering could not have been granted unless the Court further ruled and was authorized to rule as a matter of law that the other alleged acts of negligence had been disproved by the appellant, because, as we have already suggested, the prayer is not founded on the theory that no legally sufficient evidence had been adduced by the appellee to support the declaration, but is based wholly upon the assumption that the appellant had proved that the accident was not due to negligence.

We may now turn to the evidence and briefly examine it in so far it has relation to the cause of the injury. The train, consisting of a locomotive and tender, a mail car, a baggage car and two passenger coaches, left Hagerstown on Sunday afternoon, January 3rd, 1904, at four twelve, destined for Baltimore. The plaintiff and her husband were passengers thereon with tickets to Union Bridge and they occupied seats in the last car. As the train ascended a seventy or eighty-feet grade and was rounding a five degree curve the rear trucks of the

rear car left the tracks in a deep cut, but the progress of the train was not checked and the derailed car was carried for four hundred and sixty-two feet over the cross-ties and alongside of the ties until the left-hand wheels, which were outside of the rails as you look eastwardly, fell into a slight washout on the north of the track and the car wrenched loose from the one in front and turning over rolled down the mountain a distance of seventy feet. At the place where the wheels left the track there was found a defective rail. Beginning at a point seventeen feet ten inches from the western end of one of the southern, or inner, rails of the five-degree curve, there was broken out from the inner side a slab thirty-four inches long, tapering to a feather edge at one end, terminating in an abrupt break at the other, of an inch and an eighth thickness in the middle and weighing nine pounds. The rail was, when new, a sixty-pound rail—that is, it weighed sixty pounds to the yard—and was placed in the track in June, eighteen hundred and eighty-four. It had been in constant service for nearly twenty years and had lost by friction and use about four per cent of its original weight. On the day of the disaster the track inspector had walked over the track twice prior to the accident and had not discovered that there was a defective rail there. Four inches of snow were on the ground. The track was, to use his own words, "in good condition as far as I could see." "Everything seemed to be very clear to me and all right all straight; I seen nothing, nothing at all the matter with it." It was further shown that a month before, the track had been surfaced and lined up and gauged. The weather was intensely cold, the thermometer registering a temperature below zero. It was shown that cold weather has a tendency to make steel more brittle and cause it to break with more facility. The slab broken from the rail was never found though diligent search was made for it at once. If it be assumed that the defective rail caused the car to leave the track, how could the Court, as a matter of law, say that the appellant had proved that the accident was not due to negligence? The testimony of the trackwalker makes it probable, but by no means certain,

that the rail was apparently sound when he passed over the track; and if it be surmised that the locomotive of the damaged train broke the sliver from the rail it by no means follows as a matter of law that the elements, over which the appellant had no control, so disintegrated the molecules of the steel as to make it abnormally brittle.    There was evidence tending to show that the mail car, which was next to the engine, was jarred in passing over the defect in the rail, and a witness heard the baggage car go over it; so that the slab must have been out of the rail before this train reached that point, or else the engine of this train must have broken out the slab.  If the latter alternative be asserted, is it not a most singular circumstance that a slab weighing nine pounds could not be found immediately after it had been broken from the rail? nor could any fragment of it be discovered?    Was it not a question of fact for the jury to determine, and not a matter of law for the Court to decide, whether the locomotive of the damaged train broke the rail because of the influence of the cold upon the steel; or whether some other train which had passed over the road at an earlier hour had shattered the rail, and whether the trackwalker had omitted to notice it?    It must also be borne in mind that there was evidence in the cause tending to prove that sixty-pound rails are inadequate on a curve on a mountain side and are improper for a railroad upon which heavy freight cars are hauled.    "The danger of running a railroad on sixty-pound rails is the lack of stability of the web to hold up the tonnage, it would be very apt to shatter and injure the head of the rail where the weight of the wheels would come." If this be so, and it was a question of fact for the jury, then surely the use of a rail which, in consequence of twenty years service, had lost twenty-four pounds of its original weight, and therefore only weighed five hundred and seventy-six pounds, was a circumstance which furnished some evidence that the utmost care and diligence which human foresight could employ, had not been exercised.

The second prayer granted at the instance of the appellant placed the defense relied on fully before the jury.  By that

prayer the jury were left free to find the facts, and they were told that if they concluded from the evidence that the accident was caused solely by the broken rail, and that the railroad company maintained a force of competent inspectors who examined the rail from time to time in as careful a manner as was practicable, and that no defects were found in the rail, and that the company, its servants and agents used all due care practicable in the operation of the train at the time of the accident, then the company was not guilty of negligence, even though the rail broke and caused the accident. This instruction was not before us for review. Had the Court granted, instead of rejecting the first prayer, it would have been obliged to decide the identical questions of fact which, by the second prayer, were referred to the jury for determination.

But in addition to what has just been said, we are required by the terms of the appellant's first prayer to consider the other alleged causes of the injury which are set out in the declaration and in support whereof evidence was adduced by the appellee. Those causes concern the conduct of the employees of the appellant in charge of the derailed car and in control of the train of which it formed a part. The second and third counts of the *narr.* distinctly aver that the accident was due to the neglect and default of those employees. Now, there was evidence introduced tending to show that the train after leaving the track at the broken rail was carried for four hundred and sixty-two feet over the cross-ties before it plunged down the embankment. There was also evidence from which it could fairly be concluded that if the emergency brake had been applied the train could have been stopped within two hundred feet of the point where the brake had been set; and therefore, that the train could have been brought to a stop considerably before the derailed car reached the washout which caused it to overturn. There was evidence, too, that no attempt was made to apply the emergency brake until the derailed car became severed, when the uncoupling of the air hose automatically set the brakes. The engineman got no signal from the bell-rope. There was some evidence that the

flagman pulled the emergency brake rope and that the conductor also pulled it; but whether the rope which the flagman actually seized was the brake rope or the signal rope was left in doubt in consequence of the conflicting testimony bearing upon that subject. Concerning the speed of the train there was considerable divergence in the estimates of the witnesses. But whatever the speed was, it is obvious that, considering the heavy grade, a train in ascending it, could be more promptly stopped than on a level stretch of track. Before the Court could rule, as the first prayer asked it to do, that the appellant had proved by competent evidence that the accident was not due to the negligence of its servants, employees or agents, the Court would have been compelled to weigh the evidence of both the appellee and the appellant and to determine that the preponderance thereof established the defense relied on. The Court had no authority to do that. The comparative weight of evidence is for the jury. *Balto. El. Co.* v. *Neal*, 65 Md. 459. To some extent the credibility of witnesses was likewise involved and that is always a matter for the jury to decide. *Coal Co.* v. *Scally*, 27 Md. 602. Without going any more minutely into the details of the evidence as respects this branch of the case, it is quite apparent, for the reasons suggested, that the trial Court could not have granted the appellant's first prayer without usurping the province of the jury. Its refusal to give the instruction was therefore not erroneous.

The fourth prayer presented by the appellant and rejected by the Court was as follows: "That there is no evidence in this case that the road-bed and track of the defendant at the place of the accident referred to in the evidence was in bad repair or in a broken, defective or dangerous condition prior to the breaking of the rail mentioned in this case." The evidence to which allusion has already been made would have warranted the jury in concluding that an old rail originally weighing six hundred pounds but at the time of the accident worn down by use to five hundred and seventy-six pounds, was not a suitable or proper rail to be retained in a curve upon a heavy grade on the side of a mountain, and that its retention

there made the track defective or dangerous prior to the breaking of the rail.   That condition preceded the breaking of the rail.   Certainly in the face of that evidence the Court could not say that there was no evidence in the case showing that the track was in a defective or dangerous condition.   But had the prayer been granted it would have been misleading. If the rail had been broken *before* the accident occurred—and it might have been, without the track inspector having discovered it when there were four inches of snow on the ground —it would have been wholly immaterial what the condition of track antecedently was.   If the rail was not broken until the moment of the accident, it was equally immaterial what was the prior condition of the track.   It would have been immaterial in the first instance because the failure of the track-walker to discover the break, if the rail was broken, was negligence as respects the passenger; and it would have been immaterial in the second instance because, there was no evidence legally sufficient to show that the break in the rail was due to a *vis major* or to an unavoidable accident; and if not due to such a cause, its breaking was indicative of negligence no matter what the prior condition of the track was.   Beyond all this there was evidence from which the jury might have found, despite the testimony of the track inspector, that the rail had been slivered sometime before the accident happened.   A witness in describing the rail testified that the break had the appearance of having something rubbed against it a great deal and looked as if the wheels had rubbed against it *for a long time*, ten inches from the end was worn very smooth, the western end, the other part looked rough and irregular.   Another witness deposed to the fact that "one end of the rail, I suppose for eight or ten inches, was worn very smooth."   It would not be unreasonable to infer from those statements that the slab or at least a part of it, had been broken from the rail some considerable period anterior to the time the accident happened, and if that deduction were drawn the condition of the track prior to the slivering of the rail was a matter of no

moment or concern.    There was no error committed in refusing to grant the fourth prayer.

The fifth prayer, also rejected, reads thus: "That there is no evidence in this case that the accident complained of originated from any other cause than the broken rail referred to in the evidence." We need not comment upon this prayer. What we have said respecting the alleged negligence of the employees in charge of the car and the train when we were dealing with the first prayer, quite conclusively shows that the Court was entirely right in refusing to give the instruction asked by the fifth prayer.

The appellee's first and third instructions are not open to criticism.    They state familiar legal principles which have been repeatedly applied in cases of this character, and they do not require any discussion to sustain them.

From the views we have expressed it follows that the judgment must be affirmed with costs.

> *Juagment affirmed with costs above and below.*

(Decided June 20th, 1905.)