[No. 6213.]

## THE DENVER CITY TRAMWAY CO. v. HILLS.

1. **Passenger Carrier—Who is a Passenger—**A passenger alighting from a street car had reached the ground; but a coil of rope attached to or part of the trolley rope, improperly and negligently left upon the floor of the car, in front of the passenger's seat, or upon the steps, had, without fault on his part, become wound about or entangled with one of the passenger's feet, and the car being suddenly set in motion, he was thrown down, dragged along the ground and seriously injured. Held, that though the passenger had quitted the car, and reached the ground, he was nevertheless still a passenger.—(332, 333)

2. **Negligence—Presumptions—**Held, in the same case, that though at each change of direction of the car, at the terminus of its route, it was necessary to change the trolley rope, it was the duty of the street railway company to provide a suitable trolley

rope and pole, and suitable attachments thereof, and not only to see that the rope was properly fastened when the car began its route, but to exercise the highest degree of care consistent with the operation of the car, to see that the rope remained fastened, and in a safe place, during the entire trip. No satisfactory explanation of the improper and dangerous placing of the rope being given, the maxim res ipsa loquitur should apply.—(334, 335)

The maxim applies as between passenger and carrier, whenever injury occurs to the former, even in making a voluntary movement, if such injury is caused by negligence in the defective condition of the carrier's appliances, or his negligence in the management of the vehicle.—(335, 336)

3.  Evidence—Hearsay—In an action against a street railway company for an injury to a passenger, attributed to negligently leaving a coil of the trolley rope in a dangerous place, it was proposed to show by the claim agent of the railway company that for a long period all reports of accidents occurring on the lines of the company had been made to, and examined by him, and that during all his experience no claim for injuries, like the one in question, had ever been presented. Held, pure hearsay and incompetent.—(337, 338)

4.  ——In Rebuttal—In an action against a street railway company for an injury to a passenger, attributed to negligence in the management of the trolley rope, the defendant gave evidence, not limited as to time, in respect to what had been usual and customary in the management of these ropes. Testimony as to the same matter, as existing at the time of the trial, was held properly received in rebuttal.—(338, 339)

5.  ——Personal Injury — Medical Expenses — Reasonable Value—Expert evidence is not indispensable to enable a jury to ascertain the reasonable or unreasonable character of a physician's bill.—(341)

6.  Instructions—Not Applicable to the Facts, as exhibited in the evidence, should be refused.—(342)

7.  ——Duty of Counsel to Pray—Defendant who, in an action for personal injuries, offers no instruction as to damages, is not in position to complain that the instructions given do not, more in detail, set forth the elements of damage.—(340, 341)

*Appeal from Denver District Court*—Hon. Greeley W. Whitford, Judge.

Mr. Charles J. Hughes, Jr., Mr. Gerald Hughes and Mr. Howard S. Robertson for appellant.

Mr. JAMES H. PERSHING and Mr. WILLIAM E. HUTTON for appellee.

Mr. JUSTICE HILL delivered the opinion of the court:

Appellee brought this action against appellant to recover for personal injuries which he received while in the act of alighting from one of its cars. The jury found for appellee and fixed his damages at $3,500, from which this appeal is prosecuted.

The evidence shows that the appellee entered one of the appellant's street cars at the corner of Glenarm and Seventeenth street in the City of Denver, taking his seat in the rear, or next to the rear seat, at the back end of the car, intending to ride down Seventeenth to Market street, near where his place of business was situate. When approaching the last named street the appellee gave the necessary signal for the car to stop, the conductor responded, and the car proceeded to slow down, and had come to, or nearly to a standstill, at the time the appellee attempted to alight. The evidence is conflicting as to whether the car had stopped, or was still very slightly in motion. The car was enclosed in the center and open at each end. The rear seats, where the appellee was sitting, extended the full width of the car and there were long steps upon each side of the car where these seats were, for ingress and egress to these seats, and the other parts of the car. At the time the appellee was stepping down to get off of the car, a rope, partially coiled, was lying upon the floor of the car in front of this seat, or on the steps where the appellee stepped down in getting off the car, the result was that in alighting, in some manner, this rope (which was quite light), became entangled around one of appellee's feet as he stepped from the car, the car immediately started or increased its speed, the appellee's feet were jerked

from under him by this rope, and he was dragged some distance, by which accident he received the serious injuries complained of.

It developed further that this rope was fastened to, or was a part of, the trolley rope used in holding the trolley upon the wire overhead; it was not in the place where it belonged, and the conductor, even in the exercise of ordinary care, could have ascertained that fact; no explanation was furnished upon behalf of the company, or otherwise, as to how it got in the place or position where it was at the time of the accident. It is not disclosed whether it was through a defect of the appliances used in connection with the operation of this trolley rope, or in the negligence of the employees of the company, that it became unfastened after it was last changed, if it had then been so fastened, or otherwise, in order to reach this unusual position where it never belonged, and where it became a menace to the safety of passengers.

A large number of the assignments of error pertain to a motion of the appellant for a directed verdict in its favor, the admission and rejection of certain evidence, the giving and refusal to give certain instructions, all of which are along the same line, and are covered by the same principles of the law and will be considered together.

It is claimed that the doctrine of *res ipsa loquitur* is not applicable to the facts for the following reasons: (a) that the relation of carrier and passenger did not exist when the accident occurred; (b) that the accident was not due to any defect in the roadbed, machinery, appliances or equipment of the appellant, nor to any failure upon its part to provide a proper place for the disposal of this trolley rope; (c) that the appellee, at the time of the accident, was not passive and under the control of the appellant, but was engaged in attempting to get off this car, and that his own voluntary act might just as reason-

ably have contributed to the injuries. Referring to this last, counsel say:

"It is just as probable that this accident should happen without any neglect upon the part of the appellant as it is that it was due solely to negligence upon its part; in other words, intervening agencies might just as reasonably have been responsible for its occurrence."

Had the injury occurred through the intervention of anything else upon the street, after the appellee had alighted, not connected with the car which he was then attempting to leave, and over which the employees of the appellant in charge of this car had no control, the contention of counsel might be applicable, but that is not the fact here.

In the case of *Atchison, etc., R. R. Co. v. Shean,* 18 Colo. 368, this court, at page 371, quotes with approval from the 88 Pa. St. 333, the following:

"It is the duty of the company to provide for the safe receiving and discharging of passengers. It is bound to exercise the strictest vigilance, not only in carrying them to their destination, but also in setting them down safely, if human care and foresight can do so."

As well said by the court of appeals of Missouri in the case of *Senf v. St. Louis & Suburban Railway Company,* 112 Mo. App., at page 85:

"The relation of carrier and passenger does not end until the passenger is off the car and on the street in safety.—*O'Brien v. St. Louis Transit Co.,* 84 S. W. (Mo.) 939; *Fillingham v. St. Louis Transit Co.,* 102 Mo. App. 573, 77 S. W. 314; *Lehner v. Railway,* 85 S. W. 110; *Richmond Street Railroad Co. v. Scott,* 86 Va. 902."

To the same effect is the case of *Spangler v. Saginaw Valley Traction Company,* 152 Mich. at page 411, where that court said:

"It would be a narrow application of the rule

to hold that the carrier's duty was in all cases performed if a passenger reached and stood upon the surface of the street in safety. If a passenger alighted in the night, in a dark place, at a point where a step made in any direction would be into an excavation, made by the carrier, in a street, the surface of which had been theretofore smooth and comparatively level, the existence of the excavation being unknown to the passenger, it would be doing violence to terms to say that the car was stopped and the passenger invited to alight at a proper place, or that the passenger had safely alighted.''

We cannot agree to the correctness of the argument of counsel wherein they contend that this passenger was set down safely, because he got both feet squarely upon the ground, when, as a matter of fact, a rope fastened to the car with a noose in one end of it was on the platform or steps, and in his alighting, without negligence on his part, it got fastened about his leg and was still connected with it when he stepped upon the street. Our views from the facts disclosed are that the appellee had not ceased to be a passenger of the appellant, and that such relation did not cease so long as, under the circumstances here shown, he had, through the negligence of the appellant, anything attached to him connected with this car, which, when it started, would tend to take him with it.

The appellee was a large portly man; when standing upright he could not observe the condition of his feet, nor the danger to them from the rope. There is no evidence to show that he failed to exercise reasonable diligence as to any danger which he might reasonably expect. His testimony is positive to the fact that he did not know of the existence of the rope nor of the danger, until after the accident had occurred. Under these circumstances only one conclusion could have been reached, that the com-

pany had not yet complied with its duty in respect to his leaving the car, or given him an opportunity to safely alight therefrom.

In the case of *Kansas Pacific Railway Co. v. Miller,* 2 Colo., at page 457, this court said:

"The presumption of negligence, however, does not attach itself to every injury which may overtake a passenger, while being transported in a car; it belongs only to that class of accidents where the injury is caused by a defect in the road, cars or machinery, or by want of diligence or care in those employed, or by some other thing, which the company can and ought to control."

Applying this principle to the case under consideration, a trolley rope is something which a tramway company can and ought to control.—*Wall et al. v. Livezay,* 6 Colo. 465; *Sanderson v. Frazier,* 8 Colo. 79; *Western Md. R. Co. v. Shivers,* 101 Md. 391; *Montgomery Street Ry. Co. v. Mason,* 133 Ala. 508.

We conclude that the doctrine of *res ipsa loquitur* is applicable to the facts here.—*Melton v. Birmingham Ry. L. & P. Co.,* 153 Ala. 95; Hutchinson on Carriers (2nd ed.), sec. 651; *Denver Con. Tramway Co. v. Rush,* 19 Col. App. 70; *McDonnell v. Chicago City Ry. Co.,* 131 Ill. App. 227; *D. & R. G. R. R. Co. v. Hodgson,* 18 Colo. 117.

We cannot agree with the appellant that the evidence introduced by it was sufficient to overcome any presumption raised in the appellee's favor, when he showed the conditions under which the accident occurred, and the result. In this respect counsel contend, that the evidence disclosed the fact that this car was being run from the Union Depot up Seventeenth street to somewhere above the Brown Palace Hotel near Broadway, where it switched to the opposite track on the same street and made the return trip to the depot, at each of which points the trolley rope and pole were reversed, which necessitated the

loosening of the rope from the car and its again being fastened at the other end; that the conductor testified to the fact that he so made this change at Broadway upon this return trip, at which time he fastened the rope in the usual manner and place, and that this evidence is undisputed, and was not overcome; and that it was sufficient to overcome any presumption that was raised in the appellee's favor. Upon cross-examination the conductor admitted he did not remember what actually took place at the last time the rope should have been changed before the accident. But, regardless of this, it is sufficient to say that it was not only the duty of the appellant to provide a suitable trolley rope and pole, the place for fastening, etc., but it was also its duty, through the conductor, not only to see that the rope was fastened at the time the car left Broadway, but to exercise the highest degree of diligence consistent with the operation of the car in seeing that it continued to remain fastened, and so remain in a safe place during the entire trip. This was a question for the jury to determine. That he did not do so is conclusive to the mind of any person of ordinary knowledge, as the circumstances were such, and the proper position for this rope was such that, had he exercised any diligence in this respect, the accident would not have occurred.

Counsel urge that the doctrine of *res ipsa loquitur* does not apply, for the reason that the appellee, at the time of the accident, was not passive nor under the absolute control of the appellant, but was engaged in attempting to get off of the car, for which reason they contend that his own voluntary movements may have assisted in bringing about the accident. It is probable that, had he sat still and never gotten off of the car, the accident would not have occurred; but there is no evidence that anything

other than the presence of the trolley rope caused
the accident. Appellee stepped off the car at the
usual place, in the usual manner, and gained a foot-
hold on the street. If it had not been for the posi-
tion of the trolley rope, no accident or injury would
have occurred by reason of his alighting from the
car. It is not a dangerous act to alight from a street
car; in this case it only became dangerous by virtue
of the negligence of the appellant in allowing a rope
to be in a dangerous position where it might catch,
trip, and throw a passenger. Of course, if he was
guilty of contributory negligence, he could not re-
cover, but this question was submitted to the jury
under proper instructions. The authorities pertain-
ing to this question, on which appellant relies, are
all based upon a state of facts where the injury was
actually caused by the acts of the passenger, rather
than by some condition of the appliances under the
control of the carrier.

In the case of *Paul v. Salt Lake City Ry. Co.*, 30
Utah 41, the plaintiff was injured while alighting
from a street car, due to the sudden starting of the
car; the court, at page 49, said:

"In case of a carrier and passenger, the rule
of '*res ipsa loquitur*' applies not only to cases of
collision, derailing and upsetting of coaches, break-
ing of machinery, appliances, and the like, but also
to the doing of acts by the servants operating the
machinery, and to the management of instrumentali-
ties over which the carrier has control, and for the
management of which he is responsible."

That the doctrine of *res ipsa loquitur* is applic-
able where the passenger is making a voluntary
movement, and the injury is caused by something
absolutely either in the position or condition of the
carrier's appliances, or in the management of the
means of transportation, is clearly shown by the fol-

lowing cases.—*Gilmore v. Brooklyn Heights R. Co.*, 39 N. Y. Supp. 417; *Birmingham Union Ry. Co. v. Hale*, 90 Ala. 8; *Burt v. Douglas County Street Ry. Co.*, 83 Wis. 229; *Paul v. Salt Lake City Ry. Co.*, 30 Utah 41; *Rosen v. Boston*, 187 Mass. 245; *C. & A. R. R. Co. v. Buckmaster*, 74 Ill. App. 575; *Chicago City Ry. Co. v. Carroll*, 102 Ill. App. 202; *Butler v. City of Kingston*, 77 Fed. 655; *Rattan v. Central Elec. Ry. Co.*, 120 Mo. App. 270; *McRae v. Metropolitan St. Ry. Co.*, 125 Mo. App. 562; *McCord v. Railroad Co.*, 134 N. C. 53; *Barnes v. N. Y. Cent. & H. R. R. Co.*, 87 N. Y. Supp. 608.

This disposition of these questions carries with it all assignments of error pertaining to instructions given and refused along the same lines; likewise any evidence complained of, in connection with this phase of the case.

Complaint is made to the ruling of the court in refusing to permit Samuel C. Dorsey, the claim agent of the appellant, to testify, that all reports of accidents of the company, for a long period of time previous to the trial, had been made to him; that he investigated them; that during all of his experience as such claim agent he had never received any report, nor had any claim ever been filed on account of injuries sustained by reason of parties becoming entangled in trolley ropes, and that during all of such time he had never heard of, nor had there ever been reported, the occurrence of any such an accident save the one in this particular case.

Appellant did not offer to show that the witness had ever seen an accident, but from the above statement it will be seen that his information was gained from reports made to him by other people not under oath. The substance of which testimony, if admitted, would have been as to what these reports con-

22

tained, what he had heard, and what he had not heard as to how accidents happened. This was purely hearsay, and was not competent, and even if the witness Dorsey had been personally present at many accidents concerning which he attempted to testify, still his testimony as to how other accidents occurred would be immaterial to any issue in this case. The cases cited to sustain this position relate to structural or permanent conditions where an appliance is in a permanent fixed position and condition on all cars of a carrier. The fact that a million passengers have used such cars without accident, as in the New York cases, might be some evidence that such appliance, in its usual position, is not dangerous. In some of these cases it is expressly stated that if the accident was caused by the manner of operating the road, the evidence offered would be deemed incompetent; none of them are applicable to the facts here. This may have been the only time in many years that the appellant, through its agents, was negligent with respect to its trolley ropes, but proof that it exercised proper care on other occasions, and that no accident occurred at any other time, would not be competent to absolve it from responsibility from the want of care on this particular occasion.

Complaint is also made to the evidence of one witness offered in rebuttal as to the manner and place in which trolley ropes were fastened on the Seventeenth street car line at the time of the trial, for the reason that it is claimed that all evidence of this character should be confined to the custom that prevailed at the time of the accident. Counsel claim that this witness was allowed to testify, not to any facts that existed when the accident occurred, but to a state of facts that he himself observed some three or four years after the injuries in question had

been received, and, as they allege, after the type and construction of the car and the manner of fastening the trolley rope had been changed on account of the changed conditions. We think this evidence was competent in rebuttal to the evidence offered by appellant. It offered testimony as to what was the usual, general and customary manner of fastening these ropes; it was given considerable latitude in this respect; some of this evidence does not appear to have been limited to any particular time. Its witness, Casey, testified, in substance, that the design and construction of the fenders used on all the cars of the defendant company are of the same general character and make, and were in August, 1903. The strap of iron is a permanent portion of the fender and necessary in its construction. The trolley ropes are of customary and uniform length—which is twenty-five feet—and that is the length that was used in 1903. The size of a trolley rope was the same in 1903 that it is now. From the foregoing and other testimony, we take it that the appellant was permitted to introduce evidence of the manner of fastening trolley ropes in general at other times than on the specific occasion of the accident; it all tended to show that there was a general, usual and customary place and manner of fastening the trolley ropes from the time of the first employment, by the company, of some of these witnesses, down to the time of giving their testimony, which included the period from the time of the accident to the trial. Under these circumstances, where the appellant was allowed to introduce evidence, if immaterial, it cannot complain if the appellee was allowed, likewise, to introduce evidence in rebuttal to it; when this testimony was admitted it was stated that it was offered for the purpose of impeachment, and it would only tend to impeach the testimony which it

contradicted.   Under these circumstances, we find
no prejudicial error in the admission of this testi-
mony.—Wigmore on Evidence, sec. 15.

Complaint is made to the instruction given con-
cerning the measure of damages; it is claimed that
it is too broad and general in its terms and does not
lay down any rule of law to assist the jury in arriv-
ing at a correct and proper estimate of the loss sus-
tained.   The specific objections are that it permits a
recovery for any expense that the appellee may have
been put to, regardless of whether they were neces-
sary or reasonable, pertaining to which counsel
claim it is a fundamental principle that it is not only
necessary to show 'the amount expended, but to go
a step further, and to show that such amount was
necessary and reasonable.   This instruction reads as
follows:

"The court instructs the jury that if you find
the issues herein for the plaintiff, in determining
the amount of damages to which he is entitled by
reason of his injury, you have a right to consider his
expenses, if you find from the evidence that he in-
curred any expenses for medical and surgical assist-
ance, the pain and suffering to which he has been
subjected, both mental and physical, and the loss of
time which has resulted from his injury, the nature
and extent of his physical injuries, and their effect,
if any, upon his ability to earn his living since the
accident, as compared with his ability to do so be-
fore, and the probable effect, if any, of those inju-
ries, upon the future capacity for work and ability
to earn his living, but in no event shall the damages
exceed the sum of $15,135.00."

The appellant did not offer any instruction con-
cerning damages, and is not in a position to com-
plain, because the court did not set forth more de-
tails with reference to the sundry elements of dam-

ages. Its complaint to the one given for the medical and surgical services is not well taken. The evidence disclosed that the appellant, without expense to the appellee, had furnished him with a very able and competent physican and surgeon, who attended him for a considerable period of time; that the total claim for medical expenses was limited to twenty or twenty-five dollars for attendance by the appellee's family physician, for a few trips only, and some others in consultation with the surgeon of the appellant company. We think the evidence, as a whole, shows that this amount was reasonable and these services necessary, and that it did not require the opinion of an expert on those questions, and that the jury could not have been misled concerning it.

A somewhat similar instruction was approved in the case of *Denver City Tramway Company v. Martin*, 44 Colo. 324, wherein this court quoted with approval from *Hannibal & St. Joseph R. R. Co. v. Martin*, 111 Ill. 219. Besides, the instructions as a whole, in substance, told the jury that they must make all their findings from the evidence. The evidence upon the question of damages for medical and surgical expenses was limited to those necessary and in a reasonable amount, and upon the other matters the instructions limited it to such elements of damages as the evidence showed were actually sustained by the appellee. From the extent of the injuries disclosed we are of opinion that the amount awarded was not excessive.

Fifty-seven assignments of error have been presented; all appear to have been covered by elaborate briefs. We have carefully examined all of them, and have thoroughly considered the arguments and citations of authorities to support them. To discuss in detail each of them would necessarily render this opinion too long. Our conclusion is, that there was

no prejudicial error committed at the trial. Instructions should always be limited to the law applicable to the facts of the particular case. Those refused, that were applicable, were substantially covered by the instructions given. Other instructions tendered were not applicable to the facts under consideration, and should not have been given, although some of them may be correct enunciations of the law when applicable; others tendered, which were refused, should not have been given. The jury were correctly instructed as to the law applicable to the facts disclosed by the evidence.

There being no prejudicial error, the judgment will be affirmed.    *Affirmed.*

CHIEF JUSTICE CAMPBELL and Mr. JUSTICE GABBERT concur.

Decided April 3, 1911; rehearing denied June 5, 1911.