# AT LAW AND IN CHANCERY

DETERMINED IN THE

# SUPREME COURT

OF THE

# STATE OF COLORADO.

---

## DENVER, SOUTH PARK AND PACIFIC RAILWAY COMPANY v. WOODWARD, Ad'r.

1. Where an administrator, in his representative character, brings suit upon a cause of action accruing to his intestate, and the general issue only is pleaded, the character in which the plaintiff sues is admitted.

   In this case *held* that necessarily under the statute the plaintiff must sue in his representative character, and if the defendant had desired to challenge the appointment of the plaintiff as administrator he might have interposed the plea of *ne unques administrator*.

2. The regularity of an administrator's appointment can only be questioned in a direct proceeding for that purpose.

3. Letters of administration are to be considered as process under the statute (R. S. 1868, p. 524).

4. The probate judge should teste and sign process only when he elects to perform the duties which would otherwise devolve upon the clerk, and in all other cases process should be tested and signed by, and in the name of, the clerk.

5. This court will not reverse a judgment of the court below on the ground of informality alleged for the first time in this court.

6. The estimated accumulations of the deceased during the probable remainder of his life, having reference to his age, occupation, habits, bodily health and ability, furnish the true measure of compensatory damages under the statute. (Laws 1872, p. 117.)

7. For the purpose of showing the probable duration of the life of the deceased reference may be had to the Carlisle or other approved life tables.

8. While a railroad company is not an insurer of its passengers, yet it is its duty to exercise the utmost care, diligence and vigilance consistent with the mode of transportation used, and the practical operation of the road.

9. If a passenger is killed in consequence of the overturning of a car, a presumption arises that the casualty was the result of negligence, but such presumption may be rebutted.

*Appeal from District Court of Arapahoe County.*

A DEFECTIVE switch on the track of the appellant caused the overturning of a car, resulting in the death of James Smith who was being conveyed as a passenger over appellant's road. Woodward, his administrator, brought an action for the use of Salome Smith, the widow. The declaration was in the ordinary form in case; plea of the general issue. The plaintiff below had judgment on the verdict in the sum of $5,000. The facts as well as the positions contended for in this court by the appellant are sufficiently set forth in the opinion. The instruction relative to compensatory damages referred to in the opinion of the court was as follows:

"*Seventh.* If you find for the plaintiff on the question of negligence, you will, in determining the amount of damages to be assessed, take into consideration the evidence touching the probable accumulations of the deceased during the remainder of his life, that is, during the probable duration of his life, if he had not so come to his death, which would have gone to the benefit of his wife, having reference to his age, bodily health, occupation, habits and abilities to work —provided his wife was dependent upon him for support."

Messrs. SAYRE & BUTLER, and HUGHES & WELBORN, for appellant.

Messrs. SYMES & DECKER, for appellee.

THATCHER, C. J. This action is wholly statutory. It is founded upon section one of "an act concerning damages," approved February 8th, A. D. 1872 (Laws of 9th session, p. 117), which provides "when the death of any person is

caused by the wrongful act, misconduct, negligence or omission of another, the *personal representatives* of the former may maintain an action therefor against the latter, if the former might have maintained an action had he or she lived, against the latter for the same act, misconduct, negligence, or omission, provided the action shall be commenced within two years from the date of the death of the injured person, etc."

We are confronted *in limine* with the question as to whether to entitle a *personal representative* to recover in an action founded upon this statute, it is necessary, where the general issue only is pleaded, that he shall prove his character as such. Where an administrator, in his representative character, brings a suit upon a cause of action accruing to his intestate, and in his declaration makes *profert* of his letters of administration, he is not bound to produce the letters at the trial where the defendant has pleaded the general issue only. In such case the general issue admits the due appointment of the administrator, and puts the plaintiff upon proof of the alleged cause of action. The plaintiff's character is not questioned, but only his right to recover on the merits. *Brockington, Administrator*, v. *Vereen*, 1 Bailey (S. C.), 447; *Kowanchi* v. *Askew*, 17 Ark. 595; 2d Starkie on Ev. 548; 5 Robinson's Practice, 60; 1st Chitty's Pleadings, 517 (16th Am. ed.).

To a certain class of actions arising subsequent to the intestate's death, a different rule applies for obvious reasons.

Upon the appointment and qualification of an administrator, the personal property of the intestate by law vests in him. If, after his appointment, any such personal property should be converted by another, he may bring an action in trover at his election, either in his representative capacity, or in his individual character in his own right. In either case, upon general issue pleaded, in order to recover, he must show property in himself, which can only be done by the production of his letters of administration, or other competent evidence of his appointment. It is well under-

stood that the plaintiff cannot succeed in this action, unless he proves: 1st, property in the thing converted, either general or special; 2d, a wrongful conversion by the defendant; 3d, his right to the possession of it, at the time of the conversion. *Stevenson* v. *Little*, 10 Mich. 439; *Davidson* v. *Waldron*, 31 Ill. 129; *Vanderburgh* v. *Bassett*, 4 Minn. 251.

It necessarily follows that for a conversion, *in his own time*, an administrator, to make out his case, must prove his representative character. It is a link in his chain of title. 1st Chitty's Pleading, 517.

It is equally true that when an administrator *declares* in ejectment upon his own seizin, to make out his case, it is essential for him to prove his appointment as administrator, as part of his title, although he need not declare as administrator. *Aldis* v. *Burdick*, 8 Vt. 21.

The plaintiff in ejectment, in the absence of statute, without proof that he was seized of the legal estate in the premises at the time of the alleged demise, must fail.

To the extent here indicated, and for the reasons above set forth, the text-books and cases cited by counsel in support of the doctrine there laid down (2 Starkie on Ev. 548; Redfield on Laws of Wills, 128, note; 1st Chitty's Pl. 517 [16th Am. Ed.]; *Browning* v. *Huff*, 2 Bailey, 177; *Aldis, Ex.* v. *Burdick*, 8 Vt. 21; *Hunt* v. *Stevens*, 3 Taunt. 113; *Marsfield* v. *Marsh*, 2 Lord Raymond, 824; *Blainfield* v. *March*, 1 Salk. 285), and others, bearing a similitude to them in principle, go.

It will be observed that these authorities are confined to cases where the wrong or injury was done to the plaintiff, and *in which he could maintain a suit in his own name without designating himself as administrator*. The case under consideration does not belong to this class. *Necessarily*, under the statute the plaintiff must sue in his representative character. If he should not, the declaration would be demurrable. If the defendant had desired to challenge the appointment of the plaintiff as administrator, he might have interposed the plea of *ne unques adminis-*

*trator.* This plea would have put the plaintiff upon proof of his representative character. Having plead the general issue only, he thereby waived the production of the letters of administration at the trial, and admitted that plaintiff was authorized to bring the suit. But defendant strenuously contends that if the general issue does not require the plaintiff to prove his appointment, the plaintiff nevertheless chose to put that fact in issue by offering in evidence his letters, and that therefore the parties, by their implied agreement in open court, having tendered an issue as to the validity of the letters, the court must decide the point. This is a specious but mooted doctrine, and in the case of *Reynold's Executors* v. *Torrance,* 2 Brevard (S. C.), 484, it was denied by a majority of the court. If we were disposed to accept it (which we are not, as it raises an issue foreign to the record) it would not avail the defendant in this case.

Even had the plea of *ne unques administrator* been filed, we are of opinion that the plaintiff sufficiently proved his representative character to meet it. Letters of administration were offered and read in evidence. An exception was taken to the introduction of the letters on two grounds: first, because they purported on their face to be merely letters of administration to collect; and second, because an administrator is not a personal representative within the meaning of the statute upon which the action is founded. Upon examination of the letters read in evidence, they are found to be a literal transcript of the *form* prescribed by statute, with the blanks therein appropriately filled up. R. S. 1868, p. 655, § 46.

It is insisted that these are only letters of administration to collect, for the reason that full thirty days had not elapsed subsequent to the death of the intestate prior to the appointment of the administrator. The law provides that if " the widow or other relative of the intestate" shall fail to apply within twenty days from the death of such intestate, the probate court may grant administration to any

creditor or creditors who shall apply for the same within the ten days next ensuing, and if no creditor applies within that time, administration may be granted to any person or persons whom the judge of probate may think will best manage the estate. R. S. 1868, p. 654, § 44. The statute thus accords to the widow or next of kin, and to the creditors, the right of applying for administration in the order prescribed therein. The parties entitled to apply for administration may waive the right and the judge may thereupon appoint any fit person.

Whether they did in fact waive their right cannot be determined in this cause. In this collateral proceeding we may not inquire whether the letters were issued to a person entitled to them or not. As the judge of probate had competent jurisdiction of the cause the regularity of the administrator's appointment can only be questioned in a direct proceeding for that purpose. *Taylor* v. *Hosick*, 13 Kans. 527; *Sadler* v. *Sadler*, 16 Ark. 633; *Boody* v. *Emmerson*, 17 N. H. 577; *Emery* v. *Hildreth*, 2 Gray, 231; *Wight* v. *Wallbaum*, 39 Ill. 554; *Schnell* v. *City of Chicago*, 38 id. 389.

This disposes of the first objection, and as to the second, that the administrator is a personal representative within the intent of the statute, and authorized to bring the suit, it is too well settled to need the citation of authorities.

Other objections to the letters of administration are raised for the first time in this court. It is objected that they are neither signed by the probate judge nor tested in his name as required by law.

Section 42 of chapter 90, concerning "Wills, executors and administrators," R. S., p. 654, declares that all letters testamentary and of administration shall be under the seal of the court, and attested and signed as *other* process.

Section 47 of the same chapter, R. S., p. 655, provides that all letters of administration shall be tested and signed, *as other process*, in the name of the probate judge, and be issued under the seal of the court.

Section 15 of chapter 71, concerning "Probate Courts," R. S., p. 524, provides that letters of administration, writs, summonses, citations, subpœnas, and *all other process*, which may be made or issued by the judge of probate in the discharge of his duties  *  .  *  *  shall bear teste in the name of the probate judge, and be sealed with the seal of the said probate court.

It is apparent from the language of these sections that letters of administration are to be considered as *process*, issuing out of the probate court, within the meaning both of the act concerning "Wills, executors and administrators," and the act concerning "Probate Courts," and that letters of administration are to be attested and signed in the same manner as all other process. Were these the only sections pertinent to the question under examination we would be bound to conclude that the letters read in evidence were not attested and signed as required by law. Until February 8, 1865 (R. S., p. 527), the probate judge of Arapahoe county acted as his own clerk, and necessarily issued and signed all process emanating from that court. No other person was authorized by law to do it.

March 11th, 1864 (R. S., p. 525), the legislature provided " that the county clerks of the several counties " (Arapahoe county not being included) " named in the act " (except the county of Gilpin) " shall be *ex-officio* clerks of the said probate courts therein, and they shall perform the duties respecting the said probate courts, which are performed by the clerks of the district courts." The clerk of a district court is required by law to sign and teste in his name all process issuing out of that court  (R. S., p. 500, § 1). Hence it results that it is the duty of the clerk of the probate court to sign and teste in his name all process issuing from that court. The next legislature extended the provisions of the said act of March 11th, 1864, to Arapahoe county (R. S., p. 529, § 51), and further provided (§§ 49 and 50, R. S., p. 529) that " it shall be lawful for the probate judges in the several counties to perform the duties imposed

by the act, to which this is amendatory, upon the county clerks, whenever they shall elect so to do." And further, that "*whenever* the probate judge shall perform the duties of the clerk of his court, all process issued from such court shall be issued by, and in the name of, the judge thereof. These last two sections, considered in connection with the other sections cited, make it manifest that it is the intention of the law that the probate judge should teste and sign process only when he elects to perform the duties which would otherwise devolve upon the clerk, and that in all other cases process shall be tested and signed by and in the name of the clerk. The sections above quoted were re-enacted in the Revised Statutes. Although other objections were urged, we fail to discover that the letters of administration are defective in any respect. If they were informal in any particular, this court would decline to reverse the judgment below on account of such informality, alleged for the first time in this court. If the objections were valid, had they been raised in the court below, they might have been obviated by the introduction of other evidence of the appointment of the administrator. The production of the letters is evidence but not the only evidence of the administrator's appointment. The appointment is a matter of record, and by the record, if necessary, it may be established. *The State* v. *Price*, 21 Mo. 434; *Browning* v. *Huff*, 2 Bailey (S. C.), 175; *Elden* v. *Keddell*, 8 East, 189.

The appellant objects that there can be no recovery without an allegation in the declaration and proof at the trial, that the wife was dependent on her husband for support. This doctrine is announced by the supreme court of Illinois, under a statute different in some substantial respects from ours. *Chicago & R. I. R. R.* v. *Morris*, 26 Ill. 400.

We fail to discover in our statute any warrant for saying that unless the widow in the life-time of her husband was necessitous, or dependent, she is not entitled to recover. The Territorial supreme court, at its last term, repudiated that theory as being untenable. Without regard to the

needy condition of the widow, *caeteris paribus*, the measure of her damages is the same in each case. In the very carefully considered opinion just referred to, in the case of the *Kansas Pacific Railway Co.* v. *John Lundin, Administrator, etc.*, the court holds that the recovery under this statute is not governed by the needs of the wife, and what she would be entitled to demand from the deceased if he had lived, but that the estimated accumulations of the deceased during the probable remainder of his life, if he had not come to an accidental death, having reference to his age, occupation, habits, bodily health and ability, furnish the true measure of compensatory damages; and further, that for determining the number of years he would probably have lived, reference may be had to the Carlisle and other approved tables.

With this opinion we are in full accord, and as the instructions of the court (except the proviso therein contained) touching the measure of damages, are almost an exact rescript of the opinion on that subject, we see no error in them in that respect. That there was error in the proviso "that his wife was dependent on him for support," cannot inure to the benefit of the appellant, as it could not possibly be prejudiced thereby.

The question of fact submitted to the jury under proper instructions was for them to resolve, and in view of the wildly conflicting evidence adduced at the trial, if an appellate court were to interfere with their finding, it would be an unwarranted encroachment upon the province of the jury.

Although a railroad company is not, in a strict sense, an insurer of its passengers, nevertheless its duty is to guard and protect their lives by the exercise of the utmost care, diligence and vigilance consistent with the mode of transportation used, and the practical operation of the road. Shearman & Redfield, § 266; *Tuller et al.* v. *Talbot*, 23 Ill. 361.

If a car is overturned, and a passenger in consequence is

killed, a presumption arises that the casualty was the result of negligence. *Edgerton* v. *New York & Harlem R. R. Co.*, 39 N. Y. 228; *Yonge* v. *Kinney*, 28 Ga. 111; *Pittsburg, Cincinnati & St. Louis R. W. Co.* v. *Thompson*, 56 Ill. 138; *Ware* v. *Gay*, 11 Pick. 106; *Wilkie* v. *Bolster*, 3 E. D. Smith, 327.

This presumption may be rebutted by the company, by showing that the accident itself was such that human prudence and foresight could not have guarded against it. Shearman & Redfield on Negligence, § 280a.

That the accident occurred, and that it resulted in the death of James Smith, were not disputed; but the company sought to exonerate itself from liability by showing a state of facts from which the jury would be at liberty to infer that it (the company) is wholly free from fault in the premises; that no negligence or want of care is to be imputed to it in the construction and keeping in repair of its switch. But the jury, by their verdict, have found that the switch was not properly constructed; that the accident resulted either from the rail (which was forced out of its place), being too short, or from the clamp of the main switch-bar being too close to the end of said rail, or both. From the evidence they might have found either one or all of these facts. Had the defective rail been of proper length, or even had the clamp of the switch-bar, which was designed to hold the rail at its proper place, not been too near the end of such rail, the effect of the wheels of the engine and freight cars striking against the end of the defective rail would not have been to knock it out of the clamp of the main switch-bar connected with the standard. That the entire rail was too short by two or three inches, the jury may well have found from the evidence.

Williams, the appellant's witness, who was a brakeman on the road at the time of the accident, testified that the defective rail was always too short; that not thinking it was safe, three or four days before the accident, he had forced the switch end of the rail nearer the end of the

permanent connecting rail opposite, by driving a wedge between the remote end of the rail and the one next to it. The attention of the section boss was called to this defect. Nor was there any testimony to disprove that the clamp of the main or end switch-bar was too near the end of the defective rail for safety. The accident, under proper instructions, which were given, with the latitude which is allowed a jury in the determination of the weight of evidence, and the credibility of witnesses a jury might find, would not have occurred had that care and diligence been exercised which the law demands in the construction and keeping in repair of switches and tracks. So contradictory is the evidence that a verdict for either party would not be wholly without support.

With the exception of the proviso to instruction numbered seven, before referred to, we see no error in any part of the charge to which the appellant excepted, and that error is harmless. The evidence of Mr. Greenslit as to the *usual* distance on other narrow-gauge roads, between the end of a movable switch rail and the end of the adjacent permanent rail, was properly excluded, if for no other reason, on the ground that no foundation had been laid for the question. It did not appear that he had any knowledge whether there was usually a uniform distance between such rails. Nor did the court err in excluding testimony as to the distance he had found, by an examination made recently before the trial, "between the ends of switches on the Denver & Rio Grande road." The question as to whether that particular company had defectively or properly constructed its switches was not before the court, and was not a legitimate subject of inquiry.

Other and competent testimony as to the proper distance between such rails was introduced by the appellant. The jury was not, therefore, unadvised on this subject.

We have carefully examined all the specifications of error contained in the appellant's assignment, and failing

to discover any error that would warrant us in reversing the judgment of the court below, it must be

*Affirmed.*

Mr. Justice ELBERT did not sit in this case.

Upon petition for rehearing :

THATCHER, C. J.    We have fully considered the grounds upon which the petition rests.

We see no reason for changing the views expressed in the opinion in chief, touching the principles which must govern the decision of this cause so far as those principles were discussed in the opinion

Even if we entertained a doubt as to the necessity, under the state of the pleadings, of the plaintiff proving his representative character, we are satisfied that the letters of administration read in evidence sufficiently establish the character in which the plaintiff sued.

A rehearing, however, is sought also upon another ground, not before considered by the court, nor so much as adverted to in argument by counsel, viz. : that the repeal of the statute upon which the judgment of the court below was recovered, operates to divest. this court of jurisdiction to take a single step in the cause.

The statute was repealed while the cause was pending in this court. It is insisted that the judgment fell with the repeal of the statute. The question presented, therefore, is, whether a right to compensatory damages, conferred by a statute, and carried into judgment in the lower court, can be defeated in this court, by the repeal of such statute, before final judgment here. Counsel are requested to discuss :

1st. The effect of the repeal of this statute, independent of any provision in the State Constitution ;

2d. What effect upon its repeal, if any, has the constitutional provision, which inhibits the passage of laws, retrospective in their operation ?

Upon these points, counsel for petitioner may file briefs or arguments within ten days, to be answered in ten days thereafter.

Note.— For the opinion upon Petition for Rehearing in the foregoing case, see *post.*