No. 16,423.

GYLLING *v.* HINDS ET AL.
(222 P. [2d] 413)

Decided September 11, 1950.

345

Mr. JOHN IRA GREEN, for plaintiff in error.

Mr. MERLE M. MARSHALL, Mr. WHITFORD W. MYERS, for defendants in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

To set aside a judgment on a jury's verdict against him, plaintiff in error, defendant below, relies upon the inapplicability of the maxim of res ipsa loquitur as applied in the case, and contends that the verdict is a so-called "quotient" verdict.

Defendant, as owner of a quarter section of irrigated land in Conejos county, on May 12, 1948, contracted with one Clyde A. Clarke for the raising of potatoes thereon. October 1, 1948, Clarke, pursuant to the contract, was having the potato crop harvested and stored in an under-

ground cellar being constructed by defendant on the latter's ground. Clarke employed Hubert Hinds, intestate, on the morning of October 1, as a laborer to assist in the digging, and the storing of the potatoes. The cellar was not fully constructed, in that the roof was built of spruce poles covered on top with wire and straw and the job of piling dirt on top of the wire and straw was being done by dragline in operation at that time, which had covered about three-fourths of the west side of the cellar. Clarke and Hinds were in the cellar assisting in the unloading of a truck driven by Carlos Cisneros when the roof collapsed, killing both Clarke and Hinds. Cisneros, the driver of the truck, escaped and testified that the first thing he remembered was the cracking, making a big noise, and the whole roof fell in.

Darlene Hinds, widow of Hubert Hinds, and the mother and next friend of the three minor children, filed her complaint, the facts of which have been set out in substance. She alleged that the imperfection and defectiveness, unsafeness and inadequacy of construction of the roof and walls of the potato cellar were due to, and caused by, the negligence and want of proper, or any, care on the part of defendant, and that due to that condition, the roof collapsed, killing Hubert Hinds, who had no warning, notice or knowledge of the unsafe or defective condition of said roof prior to its collapse. She prayed judgment for $5,000.

Defendant answered, admitting the formal facts, but specifically denying that Hinds, at the time, was his servant, agent or employee, and alleging that his death was not due to the negligence of defendant, and if there was carelessness or omission of duty or negligence, it was on the part of some person or persons who were in fact third-party, independent contractors over which defendant had no control; and that all of the risk and dangers connected with the situation were obvious and apparent and known to and assumed by the deceased. The defendant did not appear or testify, and no evidence was

offered in his behalf other than the introduction of the written contract between himself and Clarke for the cultivation of the land, which is defendant's exhibit 1.

The only evidence of consequence outside of the facts heretofore stated, was from the witness Cisneros, who had been employed by defendant to haul some timbers for his potato cellar, and who, on September 29, began hauling potatoes from the field to the cellar. He testified that he was in the cellar with his truck where Hinds, the deceased, was taking orders from Clarke about fixing a potato conveyor inside the cellar, when the cellar suddenly caved in; that defendant was not present when this occurred; that there was a dragline putting dirt on the roof; that he did not know what caused the cellar to cave in, but that he did not see or observe any upright braces from the roof down. On recross-examination, he testified that the roof should have had upright braces, and that the absence of braces was the very thing that caused the cave-in. Plaintiff Darlene Hinds testified that the amount of the funeral expenses of her husband was $406.08.

Following the contention of plaintiff's counsel that the maxim of res ipsa loquitur applied to the facts of the case, the court, among other instructions, gave the following:

"Instruction No. 3

"As you have been informed in a prior instruction the burden of proof is upon the plaintiffs to prove that the injury which resulted in the death of the deceased was proximately caused by the negligent acts or omissions of the defendant. But in cases like this if you believe from a preponderance of the evidence that the thing which caused the injury and death was, at the time of the injury, under the control of the defendant or his servants, and that the injury was such as, in the ordinary course of things does not happen if those who have its management or control use proper care, then the plaintiffs must be deemed to have proven prima facie

that the defendant's negligent acts or omissions proximately caused such death.

"Instruction No. 4

"If the plaintiffs, however, fail to prove that the thing which caused injury or death was in the management or control of the defendant or his servants, or if they fail to prove that the injury or death was such that, in the ordinary course of affairs, does not happen, if those who have its management or control use proper care, then the plaintiffs shall be deemed to have failed, unless they have established by a preponderance of the evidence that the defendant was guilty of particular negligent acts or omissions which proximately caused such death.

"Instruction No. 5

"If you believe from a preponderance of the evidence that the thing which caused the injury was in the management or control of the defendant or his servants, and the injury was such as in the course of things does not happen if those who have its management or control use proper care, then those circumstances raise a presumption that the accident occured through negligence on the part of the defendant and the burden is thereby cast upon the defendant to show the absence of such negligence on the part of the defendant and his servants, or that the negligence did not proximately cause the accident. Your verdict therefore will be for the plaintiffs, unless you find from the evidence that the defendant and his servants were not negligent, or if they were negligent, that their negligence did not proximately cause such death, in which event your verdict should be for the defendant."

After submission of the case to the jury, it deliberated three or four hours, and, as appears from affidavits attached to the motion for new trial and the testimony of all the jurors interrogated by the court on the hearing for the motion for new trial, the jury, upon failing to agree upon a verdict, had a discussion among themselves

and it was decided that each juror would put down the amount of the verdict he wanted and that the total of the several amounts be divided by six and the amount of the verdict thus determined. The affidavits and testimony shows that the quotient was between thirty-five and thirty-six hundred dollars and the jury then, after discussing the matter of the funeral expenses, returned the following verdict: "We, the jury, find the issues for the Plaintiffs and assess their damages at $3500.00 plus funeral expenses."

Counsel for defendant made no objection to the instructions above set out other than the general objection that the doctrine of res ipsa loquitur is not here applicable and that the instructions on that question should not be given. Plaintiff alleged negligence in general terms.

■ ■ Completion of the construction of the potato cellar was in progress at the time of its collapse; it was on defendant's ground and being constructed for his use and benefit through some arrangement with workmen for its construction, with which the deceased had nothing to do. A cave-in or collapse of the roof while under construction, such as here, does not ordinarily happen if those who are in charge of the construction use proper care. The duty was on defendant, who was in management of the construction, whether present or not, to see that due care was used for the protection of deceased and others who were lawfully and rightfully in the cellar at the time of its collapse. The cellar was being constructed by defendant for his use and benefit and the obligation of due care rested on him alone so far as the deceased was concerned. The information and knowledge of the manner of construction was all in the defendant and the workmen employed by him for that purpose. Where general negligence was alleged, and where a legal presumption of negligence arose from the happening of the accident, it was incumbent upon defendant to meet this presumption, which he wholly failed

to do, by not appearing or offering any evidence to rebut the charge and the presumption.

Defendant contends that plaintiffs failed to show whether the dragline operator was an employee of defendant or an independent contractor. If of consequence at all, this was defendant's burden and not that of the plaintiffs.

The fact that the construction and control of the potato cellar were exclusively in the defendant and his employees, and that the deceased had no connection therewith or knowledge thereof, was not controverted in any respect by defendant. Therefore, the court properly applied the doctrine of res ipsa loquitur to the facts in the case and instructed the jury accordingly.

The remaining question for our determination, is the matter of whether the verdict falls within the prohibition of quotient verdicts. Based on the affidavits and testimony of the jurors submitted on this question, the answer is not difficult. It is undisputed that after several hours of deliberation, the jury had failed to agree upon a verdict; that some jurors favored a verdict for the full amount of $5,000 as prayed for; and one juror was holding out in favor of defendant; that some discussion was had as to the matter of arriving at an average, and as a result of this discussion, the average was taken resulting in the amount of between thirty-five and thirty-six hundred dollars. Further, it is not disputed that after arriving at this average, the jurors then discussed the question of deducting the odd amount and reducing it to $3,500, and further discussed the matter of adding the funeral expenses thereto. This latter action on the part of the jury was an amendment to the average arrived at in the manner complained of. Thus proceeding, the jury by adding to the average sum, as well as deducting therefrom, presents positive deliberation and consideration of the verdict as arrived at in its final form and took it out from under the objection as being a "quotient" verdict.

██ ██ Where the substance of the verdict was plain and the form was not definite, it was permissible for the court to amend the form to conform to the issues and the evidence and give definite effect to what the jury undoubtedly determined. In this matter, it is apparent that the trial court, in amending the verdict by adding the exact amount shown by the evidence to be the funeral expenses, making a total of $3,906.08, properly construed the facts in order to give the verdict effect. " * * * every reasonable construction should be adopted for the purpose of working the verdict into form so as to make it serve." 53 Am. Jur., p. 758, §1094.

We find no reversible error, accordingly the judgment should be, and is, affirmed.

MR. CHIEF JUSTICE HILLIARD not participating.

MR. JUSTICE HAYS and MR. JUSTICE ALTER dissent.