## No. 18,029.

FLOYD WEISS AS FLOYD'S BEAUTY SALON, ET AL. *v.*
IDA AXLER.
(328 P. [2d] 88)

Decided July 14, 1958.   Rehearing denied August 4, 1958.

Mr. GRAHAM SUSMAN, Mr. HYMAN D. LANDY, for plaintiffs in error.

Messrs. CREAMER & CREAMER, for defendant in error.

*En Banc.*

MR. JUSTICE FRANTZ delivered the opinion of the Court.

IDA AXLER received a certain permanent cold wave from Floyd's Beauty Salon. The wave was administered by Clara Maxson, a beautician employed by the Salon. After the administration of the permanent wave, Mrs. Axler sustained a loss of hair on the frontal portion of her scalp.

According to her complaint the loss of hair resulted from the negligence of the defendants Floyd Weiss, doing business as Floyd's Beauty Salon, and Clara Maxson. In addition to the general allegation of negligence, Mrs. Axler averred:

"That immediately after the plaintiff noticed the damage to her hair * * *, she advised the defendant Weiss of her condition, and he examined her hair, and then and there admitted that the falling out of plaintiff's hair and the breaking off of hairs in her head was due to incompetence on the part of the beauty operator, to wit, the defendant Clara Maxson; that the said Weiss then and there informed the plaintiff herein that the damage to plaintiff's hair was the direct and proximate result of the fact that his said beauty operator had either used too strong a solution of hair wave while administering said permanent, or, that the said Maxson had allowed the solution to remain in the hair too long a time."

Mrs. Axler's allegations of negligence, the alleged

statements of Weiss, and the resulting damage were denied by defendants, and the case was tried on these issues to a jury. Judgment was entered on a verdict favorable to Mrs. Axler. After the trial court denied defendants' motion for a directed verdict and for the entry of judgment for defendants notwithstanding the verdict, or in the alternative for a new trial, they sought review here by writ of error.

It is asserted that the trial court committed reversible error in eight respects. Summarized, they are: (1) insufficient evidence, and instructing the jury on the law governing the doctrine of res ipsa loquitur; (2) Mrs. Axler in pleading specific acts of negligence was foreclosed from relying on the doctrine of res ipsa loquitur; (3) the refusal of the court to admit testimony concerning custom and usage in the application of a permanent wave solution which is directed by the manufacturer thereof to be used in a specific way, a way inconsonant with said custom and usage; and (4) the admission in evidence, over objection, of photographs of the head and hair of Mrs. Axler without first requiring her to lay a foundation for their admission.

Mrs. Axler appeared at the Salon for a permanent wave and Mrs. Maxson was assigned to perform the treatment. Her hair was washed, dried, rolled on curlers, and a lotion worked into the curls. This lotion was left on for about twenty minutes, after which Mrs. Maxson poured a solution on the hair, washed it out, set it in pin-curls, and applied a dryer. When the hair had dried, Mrs. Maxson combed and set it.

At the time of, and prior to, the treatment Mrs. Axler's hair was of medium thickness, and of a fine and silky texture. In making the wave application Mrs. Maxson failed to follow the manufacturer's manuals of instruction regarding test-curl procedure.

Within a few days Mrs. Axler's hair began breaking and falling out, followed by bald spots on her scalp. She and her husband saw Weiss by appointment. Weiss ex-

amined her hair and scalp, and according to Mr. and Mrs. Axler advised them that it "looked like" Mrs. Maxson had left the solution on too long, or that the solution used had been too strong. Mrs. Axler also testified that Weiss told them that it might have been a combination of a strong solution too long applied.

Without charge to the Axlers, Weiss undertook to, and did, give Mrs. Axler a number of remedial treatments. His efforts at hair restoration were bootless. She resorted to medical aid, securing the services of dermatologists who administered to her.

According to the doctors her hair was damaged as a result of the wave application. Their testimony indicated that such damage is not the normal but the abnormal result in permanent wave treatment. They attributed the hair damage to the administration of the permanent wave. There is medical testimony that the hair damage was not traceable to her physical condition or to an allergy.

Facts pertinent to the discussion of the other questions will be set forth at the time these questions are resolved in this opinion.

The maze of decisions in this state regarding the doctrine of res ipsa loquitur results in "confusion worse confounded." Truly, our appellate courts have cumbered the doctrine with loose, inaccurate and contradictory statements to the point that a pruning job becomes imperative so that the doctrine will assume a precise and symmetrical form.

It seems a proper sequitur to say that the more we are removed from "the horse and buggy days," the more intensified and diversified our industrialism, mechanics and science become, the more technology and automation advance, the more the doctrine of res ipsa loquitur should take on a stellar role in the law of negligence. The necessity to remove existing confusion and to state a formulary for the use of the doctrine thus appears obvious.

Law should march abreast of a highly mechanized and science-developed economy. It was no idle warning that the Supreme Court of California voiced in proposing as an alternative to a widening use of the doctrine of res ipsa loquitur that "courts, to avoid gross injustice, would be forced to invoke the principles of absolute liability, irrespective of negligence * * * " *Ybarra v. Spangard,* 25 Cal. (2d) 486, 154 P. (2d) 687, 162 A.L.R. 1258. To us this, of course, is a wholly unacceptable expedient of doubtful validity, and one not needed if res ipsa loquitur is resorted to in proper cases and properly applied.

It may not be amiss to heed the prognosis of Mark Shain in his work, "Res Ipsa Loquitur," wherein he said at page 264:

"The very interests which these unreasoned decisions seem to serve — ownership and management — may ultimately realize that the true doctrine *res ipsa loquitur* and its burden-shifting presumption is, in reality, their friend and refuge * * * "

Over the years three irreconcilable results have developed in the application of the maxim of res ipsa loquitur by the appellate courts of this state. In a substantial majority of the cases in which the courts have said *res ipsa loquitur,* the courts have held that the burden shifts to the defendant to overcome the presumption of negligence by an explanation showing the defendant not to have been guilty of negligence. In other cases the application merely shifts to the defendant the burden of going forward with evidence indicating the absence of negligence on his part. And still other cases hold that the presumption is evidence, to be weighed as such against the evidence of defendant in explanation of the occurrence, upon which the jury *might* find for the plaintiff, and the court, presuming such contingent result, is obligated to submit the case to the jury for determination.

The earliest decision in Colorado involving res ipsa loquitur is apparently that of *Kansas Pacific Railway*

*Co. v. Miller,* 2 Colo. 442. The railroad's bridge gave way, resulting in death to one of the passengers, for which an action was instituted. This case is the pacesetter for the burden-shifting theory. It was therein declared:

" * * * The moment such a state of affairs was shown to exist, the presumption of negligence on the part of the defendant necessarily arose, and *it required evidence on its part to overcome that presumption, and establish affirmatively that no negligence existed on its part,* to which the accident could be attributed." (Emphasis supplied.)

Another early case clearly stated the same doctrine in these words:

"In respect to the fourth instruction given on behalf of the plaintiff, defendants' counsel contend that it contains two erroneous propositions, the first of which is decidedly against the weight of authority.

"The first proposition is, that proof that the plaintiff was a passenger on defendants' coach, that the coach was overturned, and that the plaintiff was injured thereby, raises the presumption that the overturning occurred through the negligence of the defendants.

"The second proposition is, that the foregoing facts being established to the satisfaction of the jury, *the burden of proof* is cast upon the defendants to show the absence of such negligence on their part, or negligence on plaintiff's part, which contributed to the injury.

* * *

"While the fourth instruction is in conflict with the rule established in the cases above cited, we do not think it opposed to the weight of authority upon the point, but in conformity therewith.

"The same rule laid down in the instruction was recognized by this court as the correct one in the case of *Denver, S.P. & P. Ry. Co. v. Woodward, Administrator,* 4 Colo. 1." (Emphasis supplied.) *Wall v. Livezay,* 6 Colo. 465.

*Sanderson v. Frazier,* 8 Colo. 79, 5 Pac. 632, involved a suit for damages sustained by a passenger by reason of the coach in which he was riding upsetting. Again this court applied the burden-shifting doctrine, saying:

" * * * Mr. Story lays down the rule as follows:

" 'Where any damage or injury happens to the passengers by the breaking down or overturning of the coach, or by any other accident occurring on the road, the presumption, *prima facie,* is that it occurred by the negligence of the coachman, and the *onus probandi* is on the proprietors of the coach to establish that there has been no negligence whatsoever, and that the damage or injury had been occasioned by meritable casualty, or by some cause which human care and foresight could not prevent.' "

Once the presumption of negligence arises the burden shifts to the defendant to overcome the presumption, and to establish affirmatively that no negligence existed on his part. Such is the law enunciated in the foregoing cases and reaffirmed in the following cases: *Denver, Etc., Ry. Co. v. Woodward,* 4 Colo. 1; *Denver Cons. Electric Co. v. Lawrence,* 31 Colo. 301, 73 Pac. 39; *Colorado Springs & C.C. Dist. Ry. Co. v. Petit,* 37 Colo. 326, 86 Pac. 121; *Denver City Tramway v. Hills,* 50 Colo. 328, 116 Pac. 125, 36 L.R.A.N.S. 213; *Velotta v. Yampa Valley Coal Co.,* 63 Colo. 489, 167 Pac. 971, L.R.A. 1918 B 917; *Seeing Denver Company v. Morgan,* 66 Colo. 565, 185 Pac. 339; *Denver Tramway Corp. v. Kuttner,* 95 Colo. 312, 35 P. (2d) 852; *Rudolph et al. v. Elder,* 105 Colo. 105, 95 P. (2d) 827; *Gylling v. Hinds et al.,* 122 Colo. 345, 222 P. (2d) 413; *Denver Tramway Co. v. Reid,* 4 Colo. App. 53, 35 Pac. 269; *Rio Grande Western Ry. Co. v. Rubenstein,* 5 Colo. App. 121, 38 Pac. 76; *Walters v. Denver Cons. Electric Light Co.,* 17 Colo. App. 192, 68 Pac. 117; *Denver & Rio Grande R.R. Co. v. Fotheringham,* 17 Colo. App. 410, 68 Pac. 978; *Denver Cons. Tramway Co. v. Rush,* 19 Colo. App. 70, 73 Pac. 664.

Departure from the oft-used burden-shifting theory to

"the burden of going forward with the evidence" concept appears in a few of our cases. A typical statement of the latter rule is to be found in *Denver Dry Goods Co. v. Pender*, 128 Colo. 281, 262 P. (2d) 257, in which it was said that "strictly speaking, the doctrine of res ipsa loquitur merely takes the place of evidence *as affecting the burden of proceeding with the case*, and is not itself evidence." (Emphasis supplied.) In accord are *Boulder Valley Coal Co. v. Jernberg*, 118 Colo. 486, 197 P. (2d) 155; *Brighton v. De Gregorio*, 136 Colo. 1, 314 P. (2d) 276.

*Colorado Springs & Interurban Ry. Co. v. Reese*, 69 Colo. 1, 169 Pac. 572, is authority for the third result, outlined above. Although the Supreme Court "rode off in all directions" in applying res ipsa loquitur to that case, in the final analysis it evaluated res ipsa loquitur as an inferential doctrine creating a prima facie case. The heart of the lengthy opinion in that case is contained in these words:

" * * * It may, and usually does, apply where an unusual or unexpected accident happens caused by machinery under the exclusive management or control of a defendant. Under such circumstances the accident speaks for itself, and creates a presumption of defendant's negligence. It is not alone the injury, however, but the manner and circumstances thereof, that give rise to the presumption. In such cases the *res* includes the attending circumstances, and the application of the rule of *res ipsa loquitur* involves principally the question and sufficiency of circumstantial evidence *to justify the jury in inferring the existence of the principal fact in issue — the defendant's negligence.*

"The doctrine does not dispense with the necessity that the plaintiff prove the fact of negligence, but is itself a mode of proving negligence, and is therefore evidence. * * * It simply carries the case *to the jury permitting it to infer negligence and find on all the evidence whether plaintiff has sustained the burden of proof.*

\* \* \* In the case at bar there can be no question that the physical facts surrounding the accident were such as to create a reasonable probability that the accident was the result of defendant's negligence. When plaintiff showed the physical act of an explosion in the controller and the relation of defendant to that instrument, the conclusion that negligence superinduced the accident *followed as a legitimate deduction of fact,* and the plaintiff, notwithstanding defendant's attempted exculpation, was not under the necessity of showing the particular negligence that produced the explosion in order to carry the case to the jury." (Emphasis supplied.)

Common ground for reconciling pronouncements of this court in other areas relating to the maxim res ipsa loquitur would be difficult to come by. It is not unusual to find diametrically opposed views, and sometimes a number of views, expressed on the same phase of res ipsa loquitur.

When found applicable, the doctrine is in some cases held to be evidence, and in other cases held not to be evidence. "The doctrine does not dispense with the necessity that the plaintiff prove the fact of negligence, but is itself a mode of proving negligence, *and is therefore evidence."* (Emphasis supplied.) *Colorado Springs & Interurban Ry. Co. v. Reese,* supra. See *Velotta v. Yampa Valley Coal Co.,* supra. "[T]he doctrine of res ipsa loquitur merely takes the place of evidence, as affecting the burden of proceeding with the case, *and is not itself evidence."* (Emphasis supplied.) *Denver Dry Goods Co. v. Pender,* supra; *Brighton v. De Gregorio,* supra.

What effect does defendant's explanation have upon the presumption? The answers to this question, as found in decisions of this court, are varied. We enumerate: (1) "Plaintiffs were unable to testify as to the actual cause of death. Defendants by their broad denial would have made applicable the rule of res ipsa had no specific proof as to cause of death been produced. \* \* \* However,

the nurse who was on duty on this hospital floor, and who first found and removed David's body, testified positively as to the cause of death. Her testimony was corroborated by physicians who examined the body and was not challenged. By such affirmative evidence the defendant explained and made known the cause of the death and disclosed all its knowledge and means of information as to the accident. *The plaintiffs thereafter had equal knowledge and means of information and the res ipsa doctrine could, no longer be invoked.*" (Emphasis supplied.) *St. Luke's Hosp. Ass'n et al. v. Long*, 125 Colo. 25, 240 P. (2d) 917. See *Pullman, Etc., Co. v. Freudenstein*, 3 Colo. App. 540, 34 Pac. 578. (2) " 'The introduction of evidence, however, as to how the accident happened and the cause thereof does not necessarily prevent the application of the doctrine, *even though the cause of the accident is thereby disclosed* * * * ' " (Emphasis supplied.) *Scott v. Greeley Joslin Store Co., Inc.*, 125 Colo. 367, 243 P. (2d) 394.

(3) An exculpating explanation in a case involving a bailment merely shifts the burden back to the plaintiff. "But if the bailee, under such circumstances, shows some cause of loss or damage to the thing, such as ought legally to excuse him, he need not go further and prove affirmatively that no negligence on his part operated in producing that cause, but may rest upon a showing which, on the face of it, leaves him sufficiently exonerated. *The burden now shifts back to the plaintiff bailor, who is to overcome, if he can, the bailee's prima facie exoneration.*" (Emphasis supplied.) *Nutt v. Davison*, 54 Colo. 586, 131 Pac. 390, 44 L.R.A.N.S. 1170. See *Clune v. Mercereau*, 89 Colo. 227, 1 P. (2d) 101.

(4) Other cases hold or intimate that whether the presumption of negligence has been overcome by defendant's countervailing evidence is a question to be resolved by the jury. In *Colorado Springs & Interurban Ry. Co. v. Reese*, supra, it was said: .
" * * * The *true rule* is tersely stated in *Gleeson v.*

*Virginia M. R. R. Co.,* 140 U.S. 435, at page 444, 11 Sup. Ct. 859, 862 (35 L.Ed. 458), where Mr. Justice Lamar, speaking for that high court, says:

" 'The law is that the plaintiff must show negligence in the defendant. This is done prima facie by showing, if the plaintiff be a passenger, that the accident occurred. If that accident was in fact the result of causes beyond the defendant's responsibility, or of the act of God, *it is still none the less true that the plaintiff has made out his prima facie case.* When he proves the occurrence of the accident, the defendant must answer that case from all the circumstances of exculpation, whether disclosed by the one party or the other. *They are its matter of defense. And it is for the jury to say, in the light of all the testimony, and under the instructions of the court, whether the relation of cause and effect did exist, as claimed by the defense, between the accident and the alleged exonerating circumstances.' "* (Emphasis supplied.)

See also *Kansas Pacific Ry. Co. v. Miller,* supra; *Denver, Etc., Ry. Co. v. Woodward,* supra; *Denver Cons. Electric Co. v. Lawrence,* supra; *Denver City Tramway Co. v. Hills,* supra.

(5) A variant of the last outlined rule is to be found in the recent case of *Scott v. Greeley Joslin Store Co.,* supra, wherein it was held that the doctrine of res ipsa loquitur is available to a plaintiff, in a situation permitting its application, even though evidence has been introduced tending to show that the defendant was guilty of specific acts of negligence causing the injury in suit.

(6) Contrary to the holding in *Scott v. Greeley Joslin Store Co.,* supra, are *St. Luke's Hosp. Ass'n v. Long,* supra, and *Brighton v. De Gregorio,* supra. In the St. Luke's case it was said that plaintiffs "were unable to testify as to the actual cause of death. Defendants by their broad denial would have made applicable the rule

of res ipsa loquitur *had no specific proof* as to cause of death been produced." (Emphasis supplied.)

(7) Evidence of exculpation must be credible, and in a jury trial it is the function of jurors to determine credibility. "The question whether the evidence so supplied would be sufficiently credible and convincing to destroy the adverse presumption *was one for the jury.*" (Emphasis supplied.) *Denver Tramway Corp. v. Kuttner,* supra; *Rudolph v. Elder,* supra.

(8) An anomaly in the law is that portion of the decision in *Clune v. Mercereau,* supra, in which it was held that if the doctrine of res ipsa loquitur could have been applied to the circumstances of that case, "the effect thereof was destroyed by the plaintiff calling the defendant for cross-examination under the statute and failing to rebut his testimony." See *Brighton v. De Gregorio,* supra. The cross-examiner should not be bound by such testimony, and whether it should be given credit is peculiarly a question for the jury to resolve.

Out of this welter of confusing and chaotic commentaries selected from our decisions there is much that is compatible with the historic concept of the principle of res ipsa loquitur. It is the departure from this concept that has misshapened the doctrine and made its application uncertain. Paradoxically we must move backward, i.e., return to the doctrine's earliest meaning and utility, in order to give it efficacy and meaning in the present highly mechanized, scientific and industrialized era.

It appears that the doctrine was first applied to a tort action in *Christie v. Griggs,* 2 Camp. 79, 170 Eng. Rep. 1088 (1809). Although not referred to by name, the famed Mansfield, C. J., applied the doctrine: "I think the plaintiff has made out a *prima facie* case by proving his going on the coach, the accident, and the damage he has suffered. It now lies on the other side to shew, that the coach was as good a coach as could be made, and that the driver was as skilful a driver as could anywhere be found. * * * But when the breaking down or over-

turning of a coach is proved, negligence on the part of the owner is implied. He has always the means to *rebut this presumption,* if it be unfounded; and it is now *incumbent on the defendant* to make out, that the damage in this case arose from what the law considers a mere accident." (Emphasis supplied.)

*Sharp v. Grey,* 9 Bing. 457, 131 Eng. Rep. 684 (1833) throws added light on the doctrine's early application. Plaintiff, a passenger, was injured when an axle of defendant's coach broke. Said Justice Gaseley: "The burthen lay on the Defendant to shew there had been no defect in the construction of the coach."

Another case involving a broken axle with resulting injury to a passenger was *Thatcher v. Great Western Rd. Co.,* 2 Exch. Rep. 251 (1848). It was held that "The accident having happened unaccountably * * * it rested with the defendants to explain and reconcile it with * * * innocence on their parts."

Other cases similarly applied the doctrine, but the next one which clearly placed the burden where it should be was *Cataraqui Bridge Co. v. Holcomb,* 21 U.C.Q.B. 273 (1861), in which it was said: "We are all of the opinion that the onus of proof with regard to the manner in which the collision occurred between the steamer and the bridge lay upon the defendants. All that the plaintiffs may have known was the fact that the steamboat was knocking against the bridge and breaking it to pieces."

A landmark case in the development of res ipsa loquitur was *Byrne v. Boadle,* 2 H. & C. 722, 159 Eng. Rep. 299 (1863). The opinion was written by the celebrated Chief Baron Pollock. A barrel fell from a window in the defendant's warehouse and injured plaintiff. In the course of the opinion Pollock stated that "the fact of its falling is prima facie evidence of negligence, and the plaintiff who was injured by it is not bound to shew that it could not fall without negligence, but if there are

facts inconsistent with negligence, it is for the defendant to prove them."

Sir Frederick Pollock in his great work, "The Law of Torts," (12th ed.), in discussing *Byrne v. Boadle,* clearly outlines the function of res ipsa loquitur in these words:

"Where damage is done by the falling of objects into a highway from a building, the modern rule is that the accident, in the absence of explanation, is of itself evidence of negligence. In other words, the burden of proof is on the occupier of the building. If he cannot show that the accident was due to some cause consistent with the due repair and careful management of the structure, he is liable."

The classic definition of res ipsa loquitur stated by Chief Justice Erle evolved from the pronouncements of the English courts. In *Scott v. The London & St. Katherine Docks Co.,* 3 H. & C. 596, 13 W.R. 410, 11 Jur. (N.S.) 204, 34 L.J. Exch. 220, 13 L.T. 148, 159 Eng. Rep. 665 (1865), Erle used the following definitive language:

"But where the thing is shewn to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care."

Bearing in mind the historic evolution of the maxim, we hold that the determination that the presumption of negligence arises from a set of circumstances involves the exercise of a judicial function; a situation is presented in the trial of a cause from which the court in effect determines that the experience and knowledge of mankind enjoin upon it the probability of defendant's negligence under the circumstances presented. The court resolves that the occurrence, unexplained, indicates negligence and establishes a prima facie case against the defendant.

██ Such resolution is a judicial function; and since the court decides as a matter of law the existence of probable negligence making a prima facie case, the presumption is truly one of law. Hence, to speak of "inferring negligence" in a res ipsa loquitur case is to misuse the term. Inferring is a fact-finding function, whether trial is to court or jury, and involves the discretion of the trier of the facts whether to accept or reject the inference. Not so as to the presumption of negligence in a case where res ipsa loquitur is applicable; there it is conclusive as a matter of law unless the evidence given in explanation by the defendant destroys the presumption.

██ The process of inferring relates to facts and their weight. A presumption of law cannot be weighed; its effect is static; in one case it cannot be said to have less weight than in another. A presumption has force; evidence; weight. Judges and text-writers have inveighed against the notion that presumptions can be weighed as evidence. *Gillett v. Michigan United Traction Co.*, 205 Mich. 410, 171 N.W. 536; *Brown v. Henderson*, 285 Mass. 192, 189 N.E. 41; McBaine, *"Presumptions: Are They Evidence?"*, 26 Cal. L. Rev. 519, 546; Morgan, *"Some Observations Concerning Presumptions,"* 44 Harv. L. Rev. 906, 908.

██ The doctrine of res ipsa loquitur creates a compulsive presumption of negligence which continues to exist until the defendant has satisfied the court or jury, whichever is to find the fact, by a preponderance of the evidence that he was not negligent. If he has thus satisfied the trier of the facts, he has destroyed the presumption. Thus, the sole question in a res ipsa loquitur case is: has the defendant overcome the prima facie case of negligence against him by establishing by evidence satisfactory to the jury that he was not negligent?

██ In determining the sole question in a res ipsa loquitur case, it is the province of the jury generally to consider the explanation factually and from the stand-

point of credibility of the witnesses. An explanation may be complete, but the witnesses making it not worthy of credit, in which event the force of the presumption remains intact. And the application of the doctrine is not removed where explanation is obtained by calling the defendant as an adverse party for questioning by leading questions under the rule, or by taking his deposition.

█ The defendant's explanation does not per se destroy the presumption; the conviction of the jury (or the court in a trial to it) that the explanation exonerates the defendant dissipates the presumption.

"We are of the opinion that the doctrine should also apply where dyes or other medicated treatments are used in the hair of the patron to the same extent as in those cases where mechanical devices are used. The patron coming into the beauty shop or salon relies upon the skill and knowledge of the operator who is issuing the beauty treatments to her.

"However, the application of the doctrine of res ipsa loquitur does not in itself impose liability upon the defendant. The application of the doctrine merely shifts the burden of proof and imposes upon the defendant the burden of showing that he or she was free from negligence. *The sole question remaining then being whether or not the defendant has sustained this burden of showing that she was free from negligence.*" (Emphasis supplied.) *Bush v. Bookter,* (La.App.), 47 So. (2d) 77. See *Pearson v. Butts,* 224 Iowa 376, 276 N.W. 65, 2 N.C.C.A. (N.S.) 613; *Feiderlein et al. v. Faiella,* 54 N.Y.S. (2d) 114.

█ In this case the administration of the wave treatment was under the control and management of the defendants; the plaintiff was merely the passive recipient of the treatment. Shortly after the treatment she sustained a loss of hair which in the ordinary course of things would not have happened if defendants had used due care. From this evidence arose a presumption of

negligence (making for plaintiff a prima facie case), a device which takes the place of evidence. The trial court properly said of the circumstances, *res ipsa loquitur,* and required the defendants to prove exculpation from their presumed negligence.

The testimony for plaintiff that Weiss stated that a too strong solution or an application for too long a time *may have caused* plaintiff's condition, or that a combination of an application of a strong solution for too long a time *may have caused* it, does not preclude invoking the doctrine. Weiss' statement was not as to a fact, but was more in the nature of a post-event opinion. In any event, the statement attributed to Weiss was couched in terms rising no higher than a possibility — rather than a probability.

An allegation in the complaint of this statement by Weiss, if a charge of specific negligence, does not make inapplicable the res ipsa doctrine. There was a general allegation of negligence in the complaint. "We think plaintiff has pleaded negligence both generally and specifically, and, if he has proved either, has established a cause of action against the defendant. \* \* \* The allegations of general and specific negligence were in no wise inconsistent, and proof of the specific negligence alleged would in no sense be adverse to the presumption arising from the facts of the accident, but entirely consistent therewith." *Colorado Springs & Interurban Ry. Co. v. Reese,* supra.

Defendants offered testimony of a custom at variance with the written instructions of the manufacturer in the application of the wave solution, which the trial court rejected. These instructions are safety measures: in the beginning in capital letters are the words, "Safety First," and a few paragraphs thereafter it is directed that the user of the preparation "ALWAYS make a preliminary test curl to determine processing time and condition of hair to be waved." No test curl was made of Mrs. Axler's hair.

■ Custom and usage may not be resorted to as a test of due care where not in compliance with the directions of a manufacturer of a product the use of which plaintiff has requested and the use of which may be dangerous when not so employed. That failure to follow instructions of the manufacturer in the application of a hair dye is negligence is indicated in *Sicard v. Kremer,* 133 Oh. St. 291, 13 N.E. (2d) 250. Under the facts of the present case the trial court properly excluded the proffered testimony of custom and usage.

It seems clear to us that when a patron of a beauty parlor requests a certain well known treatment and submits to that process, a part of which involves the use of a chemical, she has a right to expect that precautionary instructions of the manufacturer relating to the application of the solution to her hair will be complied with. A departure from the indicated process may not be undertaken without first obtaining the consent of the patron. She relies on the operator, and her reliance includes the expectation that the product will be used only as the manufacturer directs its use.

■ Mrs. Axler testified that certain photographs were accurate representations of her head and hair after she sustained the loss. Objection was made to this testimony on the ground that she could not know of her appearance, i.e., that she could not see herself. Until mirrors are shown to us to be instruments of deception, we hold her testimony was admissible, and the photographs properly receivable in evidence. The weight of her testimony under the circumstances was for the jury.

Finding no error, the judgment is affirmed.

Mr. Justice Day not participating.